**PACHULSKI STANG ZIEHL & JONES LLP**
Jeffrey N. Pomerantz (CA Bar No. 143717) (*admitted pro hac vice*)
Ira D. Kharasch (CA Bar No. 109084) (*admitted pro hac vice*)
John A. Morris (NY Bar No. 2405397) (*admitted pro hac vice*)
Gregory V. Demo (NY Bar No. 5371992) (*admitted pro hac vice*)
Hayley R. Winograd (NY Bar No. 5612569) (*admitted pro hac vice*)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760

**HAYWARD PLLC**
Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for Highland Capital Management, L.P.*

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § § | Chapter 11 |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,[1] | § § § | Case No. 19-34054-sgj11 |
| Debtor. | § § | |
| HIGHLAND CAPITAL MANAGEMENT, L.P., | § § | |
| Plaintiff, | § § | Adversary Proceeding No. |
| vs. | § § § | 21-03006-sgj |
| HIGHLAND CAPITAL MANAGEMENT SERVICES, INC., | § § § § | |
| Defendant. | § | |

---

[1] The Debtor's last four digits of its taxpayer identification number are (6725). The headquarters and service address for the above-captioned Debtor is 300 Crescent Court, Suite 700, Dallas, TX 75201.

**TABLE OF CONTENTS**

Page No.

INTRODUCTION ............................................................................................................................ 1

FACTUAL BACKGROUND .......................................................................................................... 3

    A.   THE HCMS NOTES ...................................................................................................... 3

        1.  The HCMS Demand Notes ................................................................................. 3

        2.  HCMS Defaults Under Each Demand Note ....................................................... 4

        3.  The HCMS Term Note ........................................................................................ 5

        4.  HCMS Defaults Under the Term Note ............................................................... 7

    B.   THE DEBTOR COMMENCES THIS ADVERSARY PROCEEDING .......................... 7

    C.   HCMS AND MR. DONDERO FILE THEIR ANSWERS .............................................. 9

ARGUMENT ................................................................................................................................. 10

    A.   Legal Standard ............................................................................................................... 10

    B.   Leave to Amend is Not Warranted Under Rule 15 ....................................................... 10

        1.  The Proposed Amendments are Futile .............................................................. 10

           i.  HCMS Fails to Adequately Plead Proposed Amendments ..................... 11

           ii. Defendant's Affirmative Defenses Lack Merit ....................................... 12

        2.  Amendments Would Cause Prejudice to the Debtor ........................................ 14

        3.  The Proposed Amendments are Proffered in Bad Faith ................................... 15

CONCLUSION .............................................................................................................................. 15

## **TABLE OF AUTHORITIES**

**Page No.**

### **CASES**

*Gonzales v. Columbia Hosp. at Med. City Dallas Subsidiary LP.*,
    207 F. Supp. 2d 570 (N.D. Tex. 2002) .................................................................. 12, 13
*Heritage Resources, Inc. v. NationsBank*,
    939 S.W.2d 118 (Tex.1996)......................................................................................... 12
*In re Heritage Organization, L.L.C.*,
    354 B.R. 407 (Bankr. N.D. Tex. 2006)................................................................. 12, 13
*Klein v. Fed. Ins. Co.*,
    No. 7:03-CV-102-D, 2014 WL 4476556 (N.D. Tex. Sept. 11, 2014) ....................... 11
Mayeaux v. La. Health Serv. & Indem. Co.,
    376 F.3d 420 (5th Cir.2004) ........................................................................................ 14
*REO Indus., Inc. v. Nat. Gas Pipeline Co. of Am.*,
    932 F.2d 447 (5th Cir. 1991) ....................................................................................... 12
*Sabre, Inc. v. Lyn-Lea Travel Corp.*,
    No. CIV.A. 3:96-CV-2068R, 2003 WL 21339291 (N.D. Tex. June 5, 2003).......... 10
*Smith v. EMC Corp.*,
    393 F.3d 590 (5th Cir. 2004) ....................................................................................... 14
*Wimm v. Jack Eckerd Corp.*,
    3 F.3d 137 (5th Cir. 1993) ........................................................................................... 10
*Woodfield v. Bowman*,
    193 F.3d 354 (5th Cir. 1999) ....................................................................................... 11

### **RULES**

Fed. R. Civ. P. 15............................................................................................................... 10
Fed. R. Civ. P. 15(a) .......................................................................................................... 10
Fed. R. Civ. P. 8................................................................................................................. 11

**DEBTOR'S OPPOSITION TO MOTION FOR LEAVE
TO FILE AMENDED ANSWER**

Highland Capital Management, L.P., the debtor and debtor-in-possession (the "Debtor" or "HCMLP") in the above-captioned chapter 11 case ("Bankruptcy Case") and the plaintiff in the above-captioned adversary proceeding (the "Adversary Proceeding") hereby opposes (the "Opposition") the *Motion for Leave to File Amended Answer and Brief in Support* [Docket No. 15][1] (the "Motion"), filed by Highland Capital Management Services, Inc. ("HCMS" or "Defendant").  In support of its Opposition, the Debtor states as follows.

**INTRODUCTION**

1. Prior to the Petition Date, James Dondero ("Mr. Dondero") used HCMLP to finance other entities directly or indirectly owned and/or controlled by him, including HCMS. In the five-year period prior to the Petition Date, Mr. Dondero and those working at his direction caused HCMLP to make approximately two dozen loans to HCMS in the aggregate principal amount of more than $20 million.

2. The Debtor commenced the instant Adversary Proceeding because HCMS breached its obligations under the promissory notes HCMS executed in favor of HCMLP.  The Debtor also commenced a similar proceeding against Mr. Dondero and certain of his related entities bringing the same claims for relief, but under different notes.

3. In the instant Motion, filed approximately four months after the commencement of the Adversary Proceeding, HCMS seeks to add two affirmative defenses to its answer, namely, that (i) the Debtor agreed not to collect on the notes upon the fulfillment of some unidentified "conditions subsequent," and (ii) the notes are "ambiguous."  These are the exact

---

[1] Refers to the docket maintained in the Adversary Proceeding.

same two affirmative defenses that Mr. Dondero belatedly included in his amended answer just days before HCMS filed the Motion.

4. Although HCMS claims that it recently learned of these new defenses "in connection with its investigation into the allegations," substantial grounds exist to deny the Motion.

5. ***First***, the proposed defenses are futile for a number of independent reasons. HCMS fails to sufficiently plead the two proposed defenses with particularity under Rule 8 of the Federal Rules of Civil Procedure and thus fails to give the Debtor fair notice of the grounds for each defense. HCMS's defense premised on ambiguity also fails as a matter of law because the notes are clear and unambiguous on their face. For these same reasons, HCMS's proposed new defense that the Debtor agreed to forego collection on the notes upon some unidentified "conditions subsequent" is equally frivolous. The notes unconditionally require payment upon the Debtor's demand, and do not provide for any conditions subsequent. In any event, the proposed defenses are undermined by the fact that <u>HCMS partially performed</u>—a fact that cannot be reconciled with HCMS's proposed defenses.

6. ***Second***, permitting the two additional defenses would prejudice the Debtor because (a) it has already engaged in discovery, (b) the deadline for serving written discovery has already passed, (c) document production is to be completed by June 14, (d) fact discovery ends on July 5, and (e) a hearing is scheduled for the week of October 11, 2021. If the new defenses are permitted at this stage, this proceeding will undoubtedly be delayed to the substantial prejudice of the Debtor and its creditors.

7. ***Finally***, the whole premise for the Motion is false because the proposed amendment does not arise from some earnest, good-faith "investigation." Rather, HCMS simply

followed in Mr. Dondero's footsteps, adopting verbatim his strategy and amended defenses. HCMS otherwise fails to offer any credible justification for adding these two defenses.

8. For the following reasons, the Motion should be denied in its entirety.

## FACTUAL BACKGROUND

**A.  The HCMS Notes**

    **1.  The HCMS Demand Notes**

9. HCMS is the maker under a series of demand notes in favor of the Debtor. These demand notes were "insider" loans between companies directly or indirectly owned and/or controlled by Mr. Dondero. *See* **Exhibit 1**[2] **at 2 and Exhibit 2** (designating Mr. Dondero as President of HCMS).

10. Specifically, on March 28, 2018, HCMS executed a demand note in favor of the Debtor, as payee, in the original principal amount of $150,000 ("HCMS's First Demand Note"). A true and correct copy of HCMS's First Demand Note is attached hereto as **Exhibit 3**.

11. On June 25, 2018, HCMS executed a demand note in favor of the Debtor, as payee, in the original principal amount of $200,000 ("HCMS's Second Demand Note"). A true and correct copy of HCMS's Second Demand Note is attached hereto as **Exhibit 4**.

12. On May 29, 2019, HCMS executed a demand note in favor of the Debtor, as payee, in the original principal amount of $400,000 ("HCMS's Third Demand Note"). A true and correct copy of HCMS's Third Demand Note is attached hereto as **Exhibit 5**.

13. On June 26, 2019, HCMS executed a demand note in favor of the Debtor, as payee, in the original principal amount of $150,000 ("HCMS's Fourth Demand Note," and collectively, with HCMS's First Demand Note, HCMS's Second Demand Note, and HCMS's

---

[2] Refers to the exhibits attached to the *Declaration of John A. Morris in Support of the Debtor's Opposition to Motion For Leave to File Amended Answer* (the "Morris Dec.") being filed concurrently with this Opposition.

Third Demand Note, the "Demand Notes"). A true and correct copy of HCMS's Fourth Demand Note is attached hereto as **Exhibit 6**.

14. Section 2 of the Demand Notes provides:

> **Payment of Principal and Interest**. The accrued interest and principal of this Note shall be due and payable on demand of the Payee.

15. Section 4 of the Demand Notes provides:

> **Acceleration Upon Default**. Failure to pay this Note or any installment hereunder as it becomes due shall, at the election of the holder hereof, without notice, demand, presentment, notice of intent to accelerate, notice of acceleration, or any other notice of any kind which are hereby waived, mature the principal of this Note and all interest then accrued, if any, and the same shall at once become due and payable and subject to those remedies of the holder hereof. No failure or delay on the part of the Payee in exercising any right, power, or privilege hereunder shall operate as a waiver hereof.

16. Section 6 of the Demand Notes provides:

> **Attorneys' Fees**. If this Note is not paid at maturity (whether by acceleration or otherwise) and is placed in the hands of an attorney for collection, or if it is collected through a bankruptcy court or any other court after maturity, the Maker shall pay, in addition to all other amounts owing hereunder, all actual expenses of collection, all court costs and reasonable attorneys' fees and expenses incurred by the holder hereof.

## 2. HCMS Defaults under Each Demand Note

17. By letter dated December 3, 2020, the Debtor made demand on HCMS for payment under the Demand Notes by December 11, 2020 (the "Demand Letter"). A true and correct copy of the Demand Letter is attached hereto as **Exhibit 7**. The Demand Letter provided:

> By this letter, Payee is demanding payment of the accrued interest and principal due and payable on the Notes in the aggregate amount of $947,519.43, which represents all accrued interest and principal through and including December 11, 2020.
>
> **Payment is due on December 11, 2020, and failure to make payment in full on such date will constitute an event of default under the Notes.**

Demand Letter (emphasis in the original).

18. Despite the Debtor's demand, HCMS did not pay all or any portion of the amounts demanded by the Debtor on December 11, 2020.

19. As of December 11, 2020, there was an outstanding principal amount of $158,776.59 on HCMS's First Demand Note and accrued but unpaid interest in the amount of $3,257.32, resulting in a total outstanding amount as of that date of $162,033.91.

20. As of December 11, 2020, there was an outstanding principal balance of $212,403.37 on HCMS's Second Demand Note and accrued but unpaid interest in the amount of $2,999.54, resulting in a total outstanding amount as of that date of $215,402.81.

21. As of December 11, 2020, there was an outstanding principal balance of $409,586.19 on HCMS's Third Demand Note and accrued but unpaid interest in the amount of $5,256.62, resulting in a total outstanding amount as of that date of $414,842.81.

22. As of December 11, 2020, there was an outstanding principal balance of $153,564.74 on HCMS's Fourth Demand Note and accrued but unpaid interest in the amount of $1,675.16, resulting in a total outstanding amount as of that date of $155,239.90.

23. Thus, as of December 11, 2020, the total outstanding principal and accrued but unpaid interest due under the Demand Notes was $947,519.43. Pursuant to Section 4 of each Demand Note, each Note is in default, and is currently due and payable.

3. **The HCMS Term Note**

24. HCMS is the maker under a term note in favor of the Debtor.

25. Specifically, on May 31, 2017, HCMS executed a term note in favor of the Debtor, as payee, in the original principal amount of $20,247,628.02 (the "Term Note," and together with the Demand Notes, the "Notes"). A true and correct copy of the Term Note is attached hereto as **Exhibit 8**.

5

26. The Term Note was another insider loan that "rolled up" HCMS's obligations under eighteen (18) separate notes that HCMS had issued in favor of HCMLP during the two-year period prior to the execution of the Term Notes, i.e. the face amount of the Term Note equaled all unpaid principal and interest then due under the earlier-issued notes. *See* **Exhibit 8, Exhibit A**.

27. Section 2 of the Term Note provides: "**Payment of Principal and Interest**. Principal and interest under this Note shall be due and payable as follows:

> **2.1 Annual Payment Dates.** During the term of this Note, Borrower shall pay the outstanding principal amount of the Note (and all unpaid accrued interest through the date of each such payment) in thirty (30) equal annual payments (the "**Annual Installment**") until the Note is paid in full. Borrower shall pay the Annual Installment on the 31st day of December of each calendar year during the term of this Note, commencing on the first such date to occur after the date of execution of this note.
>
> **2.2 Final Payment Date**. The final payment in the aggregate amount of the then outstanding and unpaid Note, together with all accrued and unpaid interest thereon, shall become immediately due and payable in full on December 31, 2047 (the "**Maturity Date**").

28. Section 3 of the Note provides:

> **Prepayment Allowed: Renegotiation Discretionary**. Maker may prepay in whole or in part the unpaid principal or accrued interest of this Note. Any payments on this Note shall be applied first to unpaid accrued interest hereon, and then to unpaid principal hereof.

29. Section 4 of the Term Note provides:

> **Acceleration Upon Default**. Failure to pay this Note or any installment hereunder as it becomes due shall, at the election of the holder hereof, without notice, demand, presentment, notice of intent to accelerate, notice of acceleration, or any other notice of any kind which are hereby waived, mature the principal of this Note and all interest then accrued, if any, and the same shall at once become due and payable and subject to those remedies of the holder hereof. No failure or delay on the part of the Payee in exercising any right, power, or privilege hereunder shall operate as a waiver hereof.

30. Section 6 of the Term Note provides:

6

**Attorneys' Fees**. If this Note is not paid at maturity (whether by acceleration or otherwise) and is placed in the hands of an attorney for collection, or if it is collected through a bankruptcy court or any other court after maturity, the Maker shall pay, in addition to all other amounts owing hereunder, all actual expenses of collection, all court costs and reasonable attorneys' fees and expenses incurred by the holder hereof.

### 4.    HCMS Defaults under the Term Note

31. HCMS failed to make the payment due under the Term Note on December 31, 2020.

32. By letter dated January 7, 2021, the Debtor made demand on HCMS for immediate payment under the Term Note (the "Second Demand Letter"). A true and correct copy of the Second Demand Letter is attached hereto as **Exhibit 9**. The Second Demand Letter provides:

> Because of Maker's failure to pay, the Note is in default. Pursuant to Section 4 of the Note, all principal, interest, and any other amounts due on the Note are immediately due and payable. The amount due and payable on the Note as of January 8, 2021 is $6,757,248.95; however, interest continues to accrue under the Note.
>
> **The Note is in default, and payment is due immediately.**

Second Demand Letter (emphasis in the original).

33. As of January 8, 2021, the total outstanding principal and accrued but unpaid interest under the Term Note was $6,757,248.95.

34. Pursuant to Section 4 of the Term Note, the Note is in default, and is currently due and payable.

### B.    The Debtor Commences This Adversary Proceeding

35. On January 22, 2021, the Debtor commenced this Adversary Proceeding to collect on the amounts due under the Notes by filing its *Complaint For (I) Breach of Contract and (ii) Turnover of Property of the Debtor's Estate* [Docket No. 1] (the "Complaint"). **Exhibit 10**.

In its Complaint the Debtor seeks: (a) damages from HCMS in an amount equal to (i) the aggregate outstanding principal due under the Notes, plus (ii) all accrued and unpaid interest thereon until the date of payment, plus (iii) an amount equal to the Debtor's costs of collection (including all court costs and reasonable attorneys' fees and expenses, as provided for in the notes) for HCMS's breach of its obligations under the Notes, and (b) turnover by HCMS to the Debtor of the foregoing amounts.

36. On March 11, 2021, the parties filed a *Stipulation and Proposed Scheduling Order* [Docket No. 7], setting forth a proposed joint scheduling order in lieu of the Alternative Scheduling Order issued by the Court. On March 16, 2021, the Court entered its *Order Approving Stipulation Regarding Scheduling Order* [Docket No. 9] (the "Scheduling Order").

37. Under the Scheduling Order, the deadline to serve discovery requests passed on May 10, 2021, and responses are due on June 14, 2021. Fact discovery closes on July 5, 2021, and dispositive motions must be filed by August 16, 2021.

38. Also on January 22, 2021, the Debtor commenced an adversary proceeding against Mr. Dondero, similarly arising from a breach of a series of demand promissory notes, and asserting the same claims. [*See* Adv. Proc. 21-3003] (the "Dondero Proceeding") [Docket No. 1] (the "Dondero Complaint"). The two proceedings largely mirror each other, except with respect to the specific notes at issue.[3]

---

[3] The Debtor also commenced three other adversary proceedings against other affiliates of Mr. Dondero to collect on insider loans. *See* Adv. Pro. 21-03004 (against Highland Capital Management Fund Advisors, L.P.); Adv. Pro. 21-03005 (against NexPoint Advisors, L.P.); and Adv. Pro. 21-03007 (against HCRE Partners, LLC). In all, the Debtor seeks to recover tens of millions of dollars that Mr. Dondero caused to be loaned by HCMLP to himself and entities owned and/or controlled by him in the years leading up to the petition date.

C.     **HCMS and MR. Dondero File Their Answers**

39.     On March 3, 2021, HCMS filed its *Answer to the Complaint* [Docket No. 6] (the "Answer"), attached hereto as **Exhibit 11**. In its Answer, HCMS asserted four affirmative defenses: (i) the Debtor's claims are barred in whole or in part by the doctrine of justification and/or repudiation; (ii) waiver, (iii) estoppel, and (iv) the Debtor's claims are barred in whole or in part by the doctrines of offset and/or setoff. *See id.* ¶¶ 53-56.

40.     Roughly two weeks later, on March 16, 2021, Mr. Dondero filed his *Original Answer* in the Dondero Proceeding [Docket No. 6] (the "Dondero Answer"). **Exhibit 12**. In the Dondero Answer, Mr. Dondero asserted four affirmative defenses: (i) "Plaintiff's claims should be barred because it was previously agreed by Plaintiff that Plaintiff would not collect on the Notes," (ii) waiver, (iii) estoppel, and (iv) "Plaintiff's claims may be barred, in whole or in part, due to failure of consideration." *Id*. ¶¶ 40-43.

41.     On April 6, 2021, Mr. Dondero filed his *Amended Answer* [Dondero Proceeding Docket No. 16] ("Dondero's Amended Answer"). **Exhibit 13**. In Dondero's Amended Answer, Mr. Dondero added, in pertinent part, the following two affirmative defenses: (i) "Plaintiff's claims should be barred because prior to the demands for payment Plaintiff agreed that it would not collect on the Notes upon fulfillment of conditions subsequent," *id.* ¶ 40, (ii) "each Note is ambiguous," *id.* ¶ 45 (together, "Dondero's Defenses").

42.     About two weeks later, on April 21, 2021, HCMS asked the Debtor if it would consent to the amendment of HCMS's Answer. On April 25, 2021, after learning that the proffered defenses were the exact same specious defenses included in Dondero's Amended Answer, the Debtor refused to consent. **Exhibit 14**.

9

43. On May 10, 2021, HCMS filed the instant Motion seeking to assert Dondero's Defenses.[4] Motion, Exhibit A ¶¶ 56, 57 (together, the "Proposed Amendments"). In support of its Motion, HCMS principally contends that it "discovered these new defenses in connection with its investigation and preparation for written discovery in connection with its defense of the case." *Id.* ¶ 8.

## ARGUMENT

**A.     Legal Standard**

44. Rule 15(a) provides that leave to amend "shall be freely given when justice so requires." *Fed. R. Civ. P. 15(a)*. "However, it is by no means automatic." *Wimm v. Jack Eckerd Corp.*, 3 F.3d 137, 139 (5th Cir. 1993). "There is a substantial reason to deny leave to amend if the proposed amendment would cause undue delay or prejudice to the non-movant, if it is motivated by bad faith or dilatory motives, if there have been repeated failures to cure deficiencies with prior amendment, or if the amendment is futile*.*" *Sabre, Inc. v. Lyn-Lea Travel Corp.*, No. CIV.A. 3:96-CV-2068R, 2003 WL 21339291, at *4 (N.D. Tex. June 5, 2003); *see also Wimm*, 3 F.3d at 139 (same). "Whether leave to amend should be granted is entrusted to the sound discretion of the [trial] court." *Wimm, 3 F.3d at 139.*

**B.     Leave to Amend is Not Warranted Under Rule 15**

   **1.     The Proposed Amendments Are Futile**

45. The amendments are futile for a number of reasons.

---

[4] The Debtor believes that because HCMS's defenses are exactly the same as Mr. Dondero's, HCMS will provide the same fact discovery to support its defenses as were provided by Mr. Dondero. At his deposition, Mr. Dondero testified in support of his defense that: (a) his sister, Nancy Dondero, acting as the Trustee of the Dugaboy Investment Trust, the holder of a majority of the Debtor's Class A interests, entered into the Amended Agreement on behalf of the Debtor, **Exhibit 15** at 173:6-25-174:2-25, (b) the Amended Agreement was "verbally" entered into, *id.* at 154:2-23, (c) he was unaware of any documentation memorializing the Amended Agreement, *id.* at 179:2-25-180:2-25, (d) he did not recall informing Frank Waterhouse, HCMLP's Chief Financial Officer, or any other HCMLP employee of the Amended Agreement, *id.* at 218:22-25-219:2-25, and (e) he did not disclose the Amended Agreement to HCMLP's independent outside auditors. *Id*. at 179:2-14.l

### i. HCMS Fails to Adequately Plead Proposed Amendments

46. HCMS fails to adequately plead its Proposed Amendments. "An affirmative defense is subject to the same pleading requirements as is the complaint" *Woodfield v. Bowman*, 193 F.3d 354, 362 (5th Cir. 1999) (citing Fed. R. Civ. P. 8)). Thus, "a defendant must plead an affirmative defense with enough specificity or factual particularity to give the plaintiff 'fair notice' of the defense that is being advanced." *Id.; see also Klein v. Fed. Ins. Co.*, No. 7:03-CV-102-D, 2014 WL 4476556, at *5 (N.D. Tex. Sept. 11, 2014) (same).

47. Here, HCMS vaguely alleges that "prior to the demands for payment Plaintiff agreed that it would not collect the Notes upon fulfillment of conditions subsequent," (Motion ¶ 56), and that "each Note is ambiguous," (*id.* ¶ 57). Such conclusory allegations are insufficient to satisfy pleading requirements under Rule 8. *See Woodfield*, 193 F.3d at 362 (defendant failed to plead affirmative defenses where "baldly" naming "broad affirmative defenses" of "accord and satisfaction" and "waiver" falls "well short of the minimum particulars needed to identify the affirmative defense in question and thus notice [plaintiff's] intention to rely on the specific, contractual defense[,]"); *Klein*, 2014 WL 4476556, at *6 (finding defendant failed to plead affirmative defenses where "broad pleading" that "Plaintiffs' claims are or may be barred to the extent Plaintiffs …. have not fulfilled all conditions precedent and subsequent" do not comply with particularly requirements under federal rules). HCMS's proposed affirmative defenses are not adequately plead, and the Motion should be denied on that basis alone.[5]

---

[5] At a minimum, Defendant should be required to plead: (i) which specific provision of each Note it contends is "ambiguous"; and (ii) the "conditions subsequent" referred to by Defendant; and (iii) who, on behalf of the Debtor, allegedly "agreed" that the Debtor would "not collect the Notes upon fulfilment" of such a "conditions subsequent." Indeed, such transparency is necessary to give the Debtor fair notice of Defendant's proposed affirmative defenses.

### ii. HCMS's Affirmative Defenses Lack Merit

48. In addition to failing to adequately plead its proposed affirmative defenses, HCMS's defenses lack merit.

49. First, Defendant's proposed affirmative defense that "each Note is ambiguous" is without merit. "Ambiguity is a question of law for the Court to decide" *In re Heritage Org., L.L.C.*, 354 B.R. 407, 429 (Bankr. N.D. Tex. 2006). "In determining whether an instrument is ambiguous, the Court is to "give terms their plain, ordinary, and generally accepted meaning unless the *instrument* shows that the parties used them in a different or technical sense.'" *Id.* (quoting *Heritage Res., Inc. v. NationsBank,* 939 S.W.2d 118, 121 (Tex.1996)) (emphasis in original). The question is whether the instrument itself can be given a certain or definite legal meaning or interpretation by the Court; the parties' views about the meaning of the note are not relevant to the Court's analysis. *See id.*; *Gonzales v. Columbia Hosp. at Med. City Dallas Subsidiary LP.*, 207 F. Supp. 2d 570, 574 (N.D. Tex. 2002) ("If the written instrument … is so worded that it can be given a certain or definite legal meaning or interpretation, then it is not ambiguous and the court will construe the contract as a matter of law."). "The contract will not be found ambiguous merely because the parties have a disagreement as to its correct interpretation." *REO Indus., Inc. v. Nat. Gas Pipeline Co. of Am.*, 932 F.2d 447, 453 (5th Cir. 1991).

50. Here, there can be no credible defense premised on ambiguity. The material terms of each two-page Note are unambiguous and clear on their face. Section 2 of the Demand Notes plainly and expressly provide that "[t]he accrued and principal of [the] Note shall be due and payable on demand of Payee." **Exhibits 1-4 at § 2**. The Term Note expressly provides that "Borrower shall pay the outstanding principal amount of the Note (and all unpaid accrued interest through the date of each such payment) in thirty (30) equal annual payments (the "**Annual**

12

**Installment**") until the Note is paid in full. Borrower shall pay the Annual Installment on the 31st day of December of each calendar year year[.]" **Exhibit 5 § 2.1**. Section 4 clearly and expressly provides that the failure to pay under the Note as it becomes due shall mature the principal of the Note and all interest then accrued. *Id.* **§ 4**. The Notes do not demonstrate any alternative meaning proscribed by the parties. The Notes should thus be ascribed their plain and ordinary meaning. *See Gonzales,* 207 F. Supp. 2d at 574 (finding agreement at issue in breach of contract action "unambiguous" where "it is unmistakably clear" regarding purpose of provisions and "proverbial four corners of the agreement" created specific, clear, enforceable right to plaintiff). HCMS's conclusory assertion that the Notes are "ambiguous" is, therefore, without merit and not grounds for leave to amend the Complaint.

51. For these same reasons, HCMS's proposed affirmative defense that "the Debtor's ability to make demand on the Notes was subject to a condition subsequent that has not yet become unable to be met" is also futile. A condition subsequent is one that excuses an already binding agreement," however, "extrinsic evidence of a condition subsequent is not admissible to vary the terms of a valid and binding written agreement." *Heritage,* 354 B.R. at 430 (internal quotations omitted). Here, the Notes unconditionally require payments thereunder either in annual installments or upon demand, and provide no contingencies for such payments. Accordingly, there is no external evidence that would establish Defendant's ability to avoid payment under the Notes based on any alleged "conditions subsequent." *See id.* (rejecting party's defense to claim of breach under promissory note based on "condition subsequent" where "the Note is clear and unambiguous in its terms, containing no contingencies or terms for adjustment of the principal amount of the

Note in the future."). The Defendant has not offered any evidence or credible basis that support its allegations of a condition subsequent to repayment of the Notes.[6]

52. Finally, there is no dispute that HCMS partially performed under the Notes, despite some recently discovered "ambiguity" or amendment to the Notes. HCMS paid approximately $14,806,823.84 in principal and interest on the Term Note prior to the filing of the Adversary Proceeding. *See* **Exhibit 16**. It is thus not credible to assert that the Notes were conditioned on a condition subsequent when Defendant was willingly making payments on those Notes without the condition subsequent having been satisfied.

### 2. Amendments Would Cause Prejudice to the Debtor

53. The proposed amendments would also prejudice the Debtor. The parties have already served discovery requests, and responses to those requests are due in just under two weeks. A trial on this matter is also set for the week of October 11, 2021. Permitting the proposed amendments would force the Debtor to engage in additional discovery to explore these new proposed affirmative defenses, and will delay the proceedings and the trial on the merits. *See Smith v. EMC Corp.*, 393 F.3d 590, 596 (5th Cir. 2004) (affirming denial of motion to amend where new theories of case would have caused "considerable delay and expense" for opposing party); *Mayeaux v. La. Health Serv. & Indem. Co.,* 376 F.3d 420, 427 (5th Cir.2004) ("W]hen late tendered amendments involve new theories of recovery and impose additional discovery requirements, courts [of appeals] are less likely to find an abuse of discretion due to

---

[6] Recent discovery in Mr. Dondero's adversary, taken in connection with this proposed affirmative defense, further evidences its futility. For instance, when pressed on this same affirmative defense during his deposition, Mr. Dondero failed to offer any credible testimony in support thereof. *See* **Exhibit 15** at 154:2-23 (Mr. Dondero vaguely contending that the demand notes he executed were "amended verbally" in "January or February 2019," but that such an agreement was "not in writing"); **173:6-25-174:2-25** (stating that his sister, Nancy, on behalf of the Debtor, entered into the agreement not to collect on notes based on "conditions subsequent"); **178:2-25** (stating that "nobody participated in any of these conversations" other than Mr. Dondero and Nancy, and that the agreement to amend the notes was not "subject to any negotiation"); **179:2-25-180:2-25** (failing to identify any documentation or memorialization in connection with such an agreement to amend the notes).

the prejudice involved." (internal quotations omitted). The HCMS notes are a material asset of the Debtor's estate. Any delay in collecting the Notes will delay distributions to the Debtor's creditors—creditors who in some instances have been waiting over a decade to be paid. There is no basis to further delay those distributions to allow HCMS to add new affirmative defenses, especially when those defenses are futile and there has been no excuse given for why it took HCMS nearly four months to "discover" those new defenses.

### 3. The Proposed Amendments Are Proffered in Bad Faith

54. HCMS vaguely contends that the Motion is not made in bad faith because "it determined additional defenses were applicable as it continued to investigate its defense of Plaintiff's allegations and prepare for discovery." Motion ¶ 9. This contention is demonstrably false. First, HCMS sought to add Dondero's Defenses almost immediately after Mr. Dondero asserted them. *See* **Exhibit 10** ¶¶ 40, 45, **Exhibit 11**. HCMS, an entity controlled and owned by Mr. Dondero, is simply following in his footsteps, using the same schemes and the same strategy. Second, HCMS offers no justification for why it took HCMS nearly four months to determine that the two-page Notes were ambiguous. HCMS otherwise provides no basis, factual or otherwise, for the alleged "conditions subsequent" defense or why HCMS would make payments under the Note prior to satisfaction of the condition subsequent. Each of the foregoing is an indicia of HCMS's bad faith in filing the Motion.

### CONCLUSION

For the foregoing reasons, the Debtor respectfully requests that the Court deny the Motion in its entirety.

Dated: June 1, 2021

**PACHULSKI STANG ZIEHL & JONES LLP**
Jeffrey N. Pomerantz (CA Bar No. 143717)
Ira D. Kharasch (CA Bar No. 109084)
John A. Morris (NY Bar No. 266326)
Gregory V. Demo (NY Bar No. 5371992)
Hayley R. Winograd (NY Bar No. 5612569)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760
Email: jpomerantz@pszjlaw.com
  ikharasch@pszjlaw.com
  jmorris@pszjlaw.com
  gdemo@pszjlaw.com
  hwinograd@pszjlaw.com

-and-

**HAYWARD PLLC**

*/s/ Zachery Z. Annable*
Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for Highland Capital Management, L.P.*