



CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed July 14, 2021**

United States Bankruptcy Judge

---

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| HIGHLAND CAPITAL MANAGEMENT | § | CASE NO. 19-34054-SGJ-11 |
| L.P., | § | (CHAPTER 11) |
|     DEBTOR. | § | |
| _____ | § | |
| HIGHLAND CAPITAL MANAGEMENT | § | |
| L.P., | § | ADVERSARY NO. 21-03006 |
|     PLAINTIFF, | § | (CIV. ACTION #3:21-CV-01378-N) |
| | § | |
| VS. | § | |
| | § | |
| HIGHLAND CAPITAL MANAGEMENT | § | |
| SERVICES, INC., | § | |
|     DEFENDANT. | § | |

---

**REPORT AND RECOMMENDATION TO DISTRICT COURT PROPOSING THAT IT:
(A) GRANT DEFENDANT'S MOTION TO WITHDRAW THE REFERENCE AT SUCH
TIME AS BANKRUPTCY COURT CERTIFIES THAT ACTION IS TRIAL READY;
AND (B) DEFER PRETRIAL MATTERS TO BANKRUPTCY COURT**

1

## I.    INTRODUCTION

The above-referenced adversary proceeding (the "Adversary Proceeding") is related to the bankruptcy case of Highland Capital Management, L.P. (the "Bankruptcy Case").[1] Highland Capital Management, L.P. (the "Debtor" or "Highland") filed a voluntary Chapter 11 petition on October 16, 2019 in the United States Bankruptcy Court of Delaware.  That court subsequently entered an order transferring venue to the Northern District of Texas, Dallas Division, on December 4, 2019.  A Chapter 11 plan was confirmed by the bankruptcy court on February 22, 2021.

On January 22, 2021, shortly before its Chapter 11 plan was confirmed, the Debtor, as Plaintiff, brought this Adversary Proceeding against the Defendant, Highland Capital Management Services, Inc. ("HCMS-Defendant").

 The Adversary Proceeding pertains to five promissory notes (collectively, the "Notes") executed by HCMS-Defendant in favor of the Debtor from 2017 through 2019. The Notes consist of a term note (the "Term Note") with annual payments and four demand notes (the "Demand Notes").

On December 3, 2020, the Debtor sent HCMS-Defendant a letter demanding payment by December 11, 2020 on each of the Demand Notes, as allowed under the terms of the Demand Notes. The HCMS-Defendant failed to make payment on any of the Demand Notes. On December 31, 2020, HCMS-Defendant failed to make the annual payment due under the Term Note. On January 7, 2021, following HCMS-Defendant's failure to pay, the Debtor accelerated the Term

---

[1] Bankruptcy Case No. 19-34054.

Note, under its terms, and demanded full payment on $6,757,248.95 outstanding and due under the Term Note.

Following HCMS-Defendant's failure to pay on the Notes in response to the demand letters, the Debtor brought this action to collect on the Notes. The Debtor's Chapter 11 plan contemplates collection on the Notes (as well as several other notes of parties related to HCMS-Defendant) as part of its funding to pay creditors.

Under the United States District Court for the Northern District of Texas' standing order of reference[2], proceedings arising in, or related to, a case under Title 11 are automatically referred to the bankruptcy court. HCMS-Defendant submitted a *Motion for Withdrawal the Reference*[3] (the "Motion") and *Brief in Support of Motion to Withdraw the Reference*[4] (the "Brief in Support") seeking to have the reference withdrawn, such that this Adversary Proceeding would be adjudicated in the District Court. The bankruptcy court conducted a status conference concerning the Motion, pursuant to Local Bankruptcy Rule 5011-1, on July 8, 2021.

The bankruptcy court submits the following report and recommendation to the District Court, ultimately recommending that the Motion be granted, ***but only at such time as the bankruptcy court certifies to the District Court that the lawsuit is trial ready***. The bankruptcy court further recommends that the District Court ***defer to the bankruptcy court the handling of all pretrial matters***.

---

[2] Misc. Order No. 33.
[3] Adversary Case No. 21-03006, Dkt. 19.
[4] Adversary Case No. 21-03006, Dkt. 20.

## II.    NATURE OF THE ADVERSARY PROCEEDING

### a.  The Complaint and Procedural History

The Debtor commenced this Adversary Proceeding by filing its *Complaint for (I) Breach of Contract and (II) Turnover of Property of the Debtor's Estate*[5] on January 22, 2021. The Debtor's Complaint asserts two causes of action: (1) a breach of contract claim ("Count 1") and (2) a turnover action under 11 U.S.C. § 542(b) for the amounts owed on the Notes ("Count 2"). The principal amounts and execution dates for each of the four Demand Notes were: (i) $150,000, executed March 28, 2018, (ii) $200,000, executed June 25, 2018, (iii) $400,000, executed May 29, 2019, and (iv) $150,000, executed June 26, 2019.  The principal amount of the Term Note was originally $20,247,628.02 and it was executed on May 31, 2017.  The Debtor now seeks combined monetary damages on the Notes totaling $7,704,768.38, plus accrued but unpaid interest and cost of collection. Because the Debtor alleges the amount due on the Notes are property of its estate, it argues that turnover pursuant to 11 U.S.C. § 542(b) is appropriate.

After being served with summons on January 25, 2021, HCMS-Defendant filed its *Original Answer*[6] on March 3, 2021 and *First Amended Answer*[7] on June 11, 2021.

HCMS-Defendant filed two proofs of claim in the Bankruptcy Case, Proof of Claim Nos. 175 and 176.  Both proofs of claim were based on alleged post-petition actions or inaction of the Debtor as fund investment advisor in managing funds in which HCMS-Defendant is an investor. On October 9, 2020, the bankruptcy court entered a *First Supplemental Order Sustaining First Omnibus Claims Objection*[8], which disallowed both of HCMS-Defendant's proofs of claim. ***The disallowed proofs of claim did not relate to the Notes.***

---

[5] Adversary Case No. 21-03006, Dkt. 1.
[6] Adversary Case No. 21-03006, Dkt. 6.
[7] Adversary Case No. 21-03006, Dkt. 34.
[8] Bankruptcy Case No. 19-34054, Dkt. 1155.

### b. The Motion to Withdraw the Reference, Response Opposed, and Reply

On June 3, 2021, HCMS-Defendant filed the Motion. As a result, the above-captioned civil action was created in the District Court. The Debtor never filed a responsive pleading to the Motion filed by the HCMS-Defendant. The bankruptcy court held a status conference, as required by Local Bankruptcy Rule 5011-1, on July 8, 2021, to assist in the bankruptcy court's preparation of this Report and Recommendation.

#### i. The Movant's Position

HCMS-Defendant argues there is cause shown for permissive withdrawal of the reference because: (1) the Texas Constitution guarantees a party to a contract a right to a jury trial; (2) the contract claim is a purely state law, non-core claim; (3) the turnover claim, under the Bankruptcy Code, is wholly derivative of the contract claim, as the amount to be turned over is based on the resolution of the contract claim; and (4) efficiency, uniformity and forum shopping factors all favor withdrawal.[9]

Further, HCMS-Defendant contends it has made a demand for a jury trial and has not consented, expressly or impliedly, to the equitable jurisdiction of the bankruptcy court to enter final orders in the Adversary Proceeding or hold a jury trial. HCMS-Defendant argues it has never filed a proof of claim related to the Notes, thus negating any argument it has consented to the bankruptcy court having jurisdiction over the litigation of the Notes.

Finally, HCMS-Defendant alleges that permissive withdrawal is proper, because the turnover claim is being used as a "Trojan Horse" to attempt to make a non-core breach of contract claim become core.[10]

---

[9] Adversary Case No. 21-03006, Dkt. 20 at 6-11.
[10] Id. at 8-9; see In re Soundview Elite Ltd., 543 B.R. 78, 97 (Bankr. S.D.N.Y. 2016).

As far as timing, HCMS-Defendant requests that the District Court immediately withdraw the reference and hear all pre-trial matters until the parties are trial-ready.

## III. THE BREACH OF CONTRACT CLAIMS AT THE CENTER OF THE ADVERSARY PROCEEDING ARE NONCORE CLAIMS, AND THE DISALLOWED PROOFS OF CLAIM OF HCMS-DEFENDANT ARE UNRELATED TO THEM

Permissive withdrawal of the reference is described in 28 U.S.C. § 157(d) as follows: "The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown." The Bankruptcy Code does not define "cause shown," but the United States Court of Appeal for the Fifth Circuit, interpreting the Supreme Court case of *Northern Pipeline Const. Co. v. Marathon Pipe Line Co.*, has identified a number of factors for courts to consider in determining whether permissive withdrawal of the reference is appropriate: (1) whether the matter is core or noncore; (2) whether the matter involves a jury demand; (3) whether withdrawal would further uniformity in bankruptcy administration; (4) whether withdrawal would reduce forum-shopping and confusion; (5) whether withdrawal would foster economical use of debtors' and creditors' resources; and (6) whether withdrawal would expedite the bankruptcy process.[11] Courts in this District have placed an emphasis on the first two factors.[12]

As explained by the Supreme Court in *Stern v. Marshall*, Congress has divided bankruptcy ***proceedings*** (*i.e.,* adversary proceedings or contested matter within a bankruptcy case)—over which there is bankruptcy subject matter jurisdiction—into three different categories: (a) those that "aris[e] under" Title 11; (b) those that "aris[e] in" a Title 11 case; and (c) those that are "related

---

[11] *Holland Am. Ins. Co. v. Succession of Roy*, 777 F.2d 992, 998-99 (5th Cir. 1985); *Mirant Corp. v. The Southern Co.*, 337 B.R. 107, 115-23 (N.D. Tex. 2006); 458 U.S. 50 (1982).
[12] See *Mirant*, 337 B.R. at 115-122.

to" a case under Title 11.[13]  Further, those that arise under Title 11 or arise in a Title 11 case are defined as "core" matters[14] and those that are merely "related to" a Title 11 case are defined as "noncore" matters. The significance of the "core"/"noncore" distinction is that bankruptcy courts may statutorily enter final judgments in "core" proceedings in a bankruptcy case, while in "noncore" proceedings, the bankruptcy courts instead may only (absent consent from all of the parties) submit proposed findings of fact and conclusions of law to the district court, for that court's review and issuance of final judgment. This is the statutory framework collectively set forth in 28 U.S.C. § 1334 and 28 U.S.C. § 157.  But while a proceeding may be "core" in nature, under 28 U.S.C. § 157(b)(2), and the bankruptcy court, therefore, has the *statutory* power to enter a final judgment on the claim under 28 U.S.C. § 157(b)(1), *Stern* instructs that any district court, in evaluating whether a bankruptcy court has the ability to issue final orders and judgments, must resolve not only: (a) whether the bankruptcy court has the statutory authority under 28 U.S.C. § 157(b) to issue a final judgment on a particular claim; but also (b) whether the conferring of that authority on an Article I bankruptcy court is *constitutional* (and this turns on whether "the action at issue stems from the bankruptcy itself or would necessarily be resolved in the claims allowance process").[15]

With respect to the claims asserted against HCMS-Defendant, it might be argued that both counts asserted against it are *statutorily* core in nature.[16] While Count 1 is a breach of contract claim for collection of amounts due under promissory notes—one of the simplest forms of a state law lawsuit—it might be argued that Count 1 is statutorily core under the catchall provision of 28

---

[13] 28 U.S.C. § 1334(b); *Stern v. Marshall*, 564 U.S. 462, 473-474 (2011).
[14] *Stern*, 564 U.S. at 473-474.  Core proceedings include, but are not limited to, 16 different types of matters, including "counterclaims by [a debtor's] estate against persons filing claims against the estate." 28 U.S.C. § 157(b)(2)(C).
[15] *Stern*, 564 U.S. at 499.
[16] 28 U.S.C. § 157(b)(2)(E), (O).

U.S.C. § 157(b)(2)(O), as the resolution of the claim would be "affecting the liquidation of the assets of the estate." However, this position would not pass constitutional muster. The cause of action does not stem from the bankruptcy itself (*i.e.,* it stems from alleged defaults on pre-petition notes) and would not be resolved through the claims allowance process (***since no pending proof of claim exists related to the Notes***). In other words, the resolution of Count 1 cannot be inextricably intertwined with the resolution of HCMS-Defendant's disallowed proofs of claim so as to confer constitutional authority on the bankruptcy court to enter a final judgment on the breach of contract claims.

Count 2, the turnover cause of action, is brought pursuant to 11 U.S.C. § 542(b) and is listed as statutorily core under 28 U.S.C. § 157(b)(2)(E). If Count 2 were freestanding and the debts due under the Notes were undisputed, it is unrefuted by HCMS-Defendant that a turnover action under 11 U.S.C. § 542(b) would be both a statutory and constitutional core claim. ***The issue is whether a turnover action to collect on disputed pre-petition promissory notes can be viewed as a core claim***. There is a split in authority on this issue. Authority exists that a turnover action is a core claim when collecting ***matured*** debts, as property of the estate, regardless of whether the indebtedness is ***disputed***.[17] In contrast, HCMS-Defendant cites authority that the scope of turnover claims under the Bankruptcy Code should not be expanded to encompass debts in dispute that arose outside of bankruptcy, including authority from this court.[18]

---

[17] *Shaia*, 476 B.R. at 230 ("To properly constitute a core proceeding under § 157(b)(2)(E), the debt must be 'matured, payable on demand, or payable on order.' 'Matured' refers to 'debts that are presently payable, as opposed to those that are contingent and become payable only upon the occurrence of a certain act or event.' …. While the Defendants assert they are not indebted to the Trustee, it is simply not relevant that the Defendants dispute liability on the instrument. The presence of a dispute does not preclude a debt from being matured. … A cause of action is a turnover proceeding under § 542(b) of the Bankruptcy Code where it seeks collection rather than creation or liquidation of a matured debt."); *see also In re Willington Convalescent Home, Inc.*, 850 F.2d at 52 n.2 ("The mere fact that Connecticut denies that it owes the matured debt for Willington's services because of a recoupment right 'does not take the trustee's action outside the scope of section 542(b)'").

[18] *In re Se. Materials, Inc.*, 467 B.R. 337, 354 (Bankr. M.D.N.C. 2012)( The distinction is when "an adversary proceeding presents a bona fide dispute as to liability, the matter cannot be viewed as a turnover proceeding"); *In re*

This court views the turnover claim as derivative of the breach of contract claims. The breach of contract claims are clearly non-core, and the bankruptcy court lacks constitutional authority to confer jurisdiction over them (absent consent—which does not exist here). A turnover action under 11 U.S.C. § 542(b) cannot be tacked onto a complaint so as to confer authority in the bankruptcy court to adjudicate an otherwise non-core claim. To hold otherwise would run counter to the dictates of the Supreme Court in *Marathon*.

In summary, this court believes that the turnover claim in the Complaint, to collect on a disputed indebtedness under the Notes, "do[es] not fall within the scope of turnover actions as contemplated by § 542 and § 157(b)(2)(E)," absent a judgment or stipulation resolving the dispute as to the indebtedness.[19]  Thus, the turnover claim, as brought, is not a core claim that the bankruptcy court can finally adjudicate, absent the consent of all parties.

## IV.    JURY TRIAL RIGHTS AND DEMAND

Pursuant to 28 U.S.C. § 157(e), if a litigant has the right to a jury trial under applicable non-bankruptcy law, a bankruptcy court may conduct the jury trial only if: (a) the matters to be finally adjudicated fall within the scope of bankruptcy subject matter jurisdiction; (b) the district court of which the bankruptcy court is a unit authorizes the bankruptcy court to do so; and (c) all of the parties consent.[20]

Starting first with whether a right to a jury trial even exists, the Seventh Amendment, of course, provides a jury trial right in cases in which the value in controversy exceeds twenty dollars and

---

*Satelco, Inc.*, 58 B.R. 781, 789 (Bankr. N.D. Tex. 1986) ("[T]his Court holds that actions to collect accounts receivable based upon state law contract principles do not fall within the scope of turnover actions as contemplated by § 542 and § 157(b)(2)(E), absent a final judgment from a court of competent jurisdiction, a stipulation, or some other binding determination of liability.").

[19] *Satelco*, 58 B.R. at 789.

[20] "If the right to a jury trial applies in a proceeding that may be heard under this section by a bankruptcy judge, the bankruptcy judge may conduct the jury trial if specially designated to exercise such jurisdiction by the district court and with the express consent of all the parties." 28 U.S.C. § 157(e) (West 2019).

the cause of action is to enforce statutory rights that are at least analogous to rights that were tried at law in the late 18th century English courts.[21] Suits "at law" refers to "suits in which legal rights were to be ascertained and determined" as opposed to "those where equitable rights alone were recognized and equitable remedies were administered."[22] This analysis requires two steps: (1) a comparison of the "statutory action to 18th century actions brought in the courts of England prior to the merger of the courts of law and equity"; and (2) whether the remedy sought is "legal or equitable in nature . . . [t]he second stage of this analysis" being "more important than the first."[23]

It is well established that the act of filing a proof of claim can operate to deprive a creditor of a jury trial right, by subjecting a claim, that would otherwise sound only in law, to the equitable claims allowance process.[24] Thus, if both of HCMS-Defendant's proofs of claims were ***pending***, it would have consented to the bankruptcy court's equitable jurisdiction and waived its right to a jury trial as to the subject matter of the ***pending*** proofs of claim.[25] However, as earlier noted, prior to the commencement of this Adversary Proceeding on January 22, 2021, HCMS-Defendant had both of its proofs of claim disallowed on October 9, 2020. Without a pending claim related to the Notes, the breach of contract claim is precisely the kind of action that would sound in law rather than in equity. By not having a filed proof of claim related to the Notes, HCMS-Defendant never subjected the Notes to the claims allowance process of the bankruptcy court and preserved its right to a jury trial on the Notes.[26] HCMS-Defendant has also not consented to the bankruptcy court conducting a jury trial pursuant to 11 U.S.C. § 157(e).

---

[21] *See City of Monterey v. Del Monte Dunes*, 526 U.S. 687, 708 (1999).

[22] *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 41 (1989).

[23] *See Levine v. M & A Custom Home Builder & Developer, LLC*, 400 B.R. 200, 205 (S.D. Tex. 2008) (quoting *Granfinanciera*, 492 U.S. at 42).

[24] *See Langenkamp v. Culp*, 498 U.S. 42, 44-45 (1990).

[25] *Id.*

[26] *Smith v. Dowden*, 47 F.3d 940, 943 (8th Cir. 1995) ("[T]he successful withdrawal of a claim pursuant to Fed. R. Bankr. P. 3006 prior to the trustee's initiation of an adversarial proceeding renders the withdrawn claim a legal nullity and leaves parties as if the claim had never been brought."); *In re Goldblatt's Bargain Stores, Inc.*, No. 05 C 03840,

In summary, HCMS-Defendant's lack of waiver of its jury trial rights, expressly or impliedly, is further reason why the bankruptcy court does not believe it can finally adjudicate the claims in the Adversary Proceeding.

## V.   PENDING MATTERS

On July 8, 2021, the bankruptcy court held a status conference with regard to the Motion.  At such time, the bankruptcy court approved, in part, *Defendant's Expedited Motion to Stay Pending the Resolution of Motion to Withdraw the Reference of Adversary Proceeding*.[27] In its oral ruling, the court granted the HCMS-Defendant's request for a stay pending resolution of the Motion as to dispositive motions in the Adversary Proceeding, but did not grant a stay as to any discovery. Under the *Agreed Scheduling Order,*[28] fact discovery concluded on July 5, 2021 and expert discovery will conclude on July 16, 2021. No dispositive motions have been filed at this time.  At this point, the parties are not trial-ready.

## VI.   RECOMMENDATION

In light of: (a) the noncore, related-to claims in the Complaint; (b) the lack of a proof of claim or any other claim related to the Notes asserted by HCMS-Defendant; and (c) the lack of any other consent by HCMS-Defendant to the equitable jurisdiction of the bankruptcy court related to the Notes, the bankruptcy court recommends the District Court: refer all pre-trial matters to the bankruptcy court, and grant the Motion upon certification by the bankruptcy court that the parties are trial-ready.

---

2005 WL 8179250, at *5 (N.D. Ill. Dec. 6, 2005) (claims withdrawn before adversary proceeding are as if never filed); *see generally, In re Manchester, Inc.*, No. 08-30703-11-BJH, 2008 WL 5273289, at *3-6 (Bankr. N.D. Tex. Dec. 19, 2008) (permissible to withdraw a claim to preserve jury trial right).
[27] Adversary Case No. 21-03006, Dkt. 26.
[28] Adversary Case No. 21-03006, Dkt. 9.

With regard to such pretrial matters, the bankruptcy court further recommends that, to the extent a dispositive motion is brought that the bankruptcy court determines should be granted and would finally dispose of claims in this Adversary Proceeding, the bankruptcy court should submit a report and recommendation to the District Court for the District Court to adopt or reject.

***END OF REPORT AND RECOMMENDATION***