| | |
|---|---|
| Clay M. Taylor<br>Bryan C. Assink<br>BONDS ELLIS EPPICH SCHAFER JONES LLP<br>420 Throckmorton Street, Suite 1000<br>Fort Worth, Texas 76102<br>(817) 405-6900 telephone<br>(817) 405-6902 facsimile<br>Email: clay.taylor@bondsellis.com<br>Email: bryan.assink@bondsellis.com<br><br>**Attorneys for James Dondero** | Deborah Deitsch-Perez<br>Michael P. Aigen<br>STINSON LLP<br>3102 Oak Lawn Avenue, Suite 777<br>Dallas, Texas 75219<br>(214) 560-2201 telephone<br>(214) 560-2203 facsimile<br>Email: deborah.deitschperez@stinson.com<br>Email: michael.aigen@stinson.com<br><br>**Attorneys for James Dondero, Nancy Dondero, Highland Capital Management Services, Inc. and NexPoint Real Estate Partners, LLC** |
| Daniel P. Elms<br>State Bar No. 24002049<br>GREENBERG TRAURIG, LLP<br>2200 Ross Avenue, Suite 5200<br>Dallas, Texas 75201<br>(214) 665-3600 telephone<br>(214) 665-3601 facsimile<br>Email: elmsd@gtlaw.com<br><br>**Attorneys for Nancy Dondero** | Douglas S. Draper (La. Bar No. 5073)<br>Leslie A. Collins (La. Bar No. 14891)<br>Greta M. Brouphy (La. Bar No. 26216)<br>HELLER, DRAPER & HORN, L.L.C.<br>650 Poydras Street, Suite 2500<br>New Orleans, Louisiana 70130<br>(504) 299-3300 telephone<br>(504) 299-3399 facsimile<br>Email: ddraper@hellerdraper.com<br>Email: lcollins@hellerdraper.com<br>Email: gbrouphy@hellerdraper.com<br><br>**Attorneys for The Dugaboy Investment Trust** |

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **In re:**<br><br>**HIGHLAND CAPITAL MANAGEMENT, L.P.**<br><br>Debtor. | §<br>§<br>§<br>§<br>§<br>§ | **Case No. 19-34054**<br><br>**Chapter 11** |
| **HIGHLAND CAPITAL MANAGEMENT, L.P.,**<br><br>Plaintiff.<br>v.<br><br>**JAMES D. DONDERO, NANCY DONDERO, AND THE DUGABOY INVESTMENT TRUST,**<br><br>Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | **Adversary No. 21-03003-sgj** |
| **HIGHLAND CAPITAL MANAGEMENT, L.P.,**<br><br>Plaintiff.<br>v.<br><br>**NEXPOINT ADVISORS, L.P., JAMES DONDERO, NANCY DONDERO, AND THE DUGABOY INVESTMENT TRUST,**<br><br>Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | **Adversary No.: 21-03005-sgj** |

| | | |
|---|---|---|
| **HIGHLAND CAPITAL MANAGEMENT, L.P.,** § § § § § § § § § § § § | | |
| Plaintiff. | | |
| v. | | **Adversary No.: 21-03006-sgj** |
| **HIGHLAND CAPITAL MANAGEMENT SERVICES, INC., JAMES DONDERO, NANCY DONDERO, AND THE DUGABOY INVESTMENT TRUST,** | | |
| Defendants. | | |
| **HIGHLAND CAPITAL MANAGEMENT, L.P.,** | | |
| Plaintiff. | | |
| v. | | **Adversary No.: 21-03007-sgj** |
| **HCRE PARTNERS, LLC (n/k/a NEXPOINT REAL ESTATE PARTNERS, LLC), JAMES DONDERO, NANCY DONDERO AND THE DUGABOY INVESTMENT TRUST,** | | |
| Defendants. | | |

## REPLY TO DEBTOR'S OBJECTION TO
## MOTION TO COMPEL ARBITRATION AND STAY LITIGATION

Defendants James D. Dondero, Nancy Dondero, and The Dugaboy Investment Trust ("Dugaboy") ("Defendants") file this reply in support of the Motion to Compel Arbitration and Stay Litigation ("Motion") and in response to Debtor's Objection to Compel Arbitration and Stay Litigation ("Objection").

### I. INTRODUCTION

1. Debtor attempts to assert new claims under the rejected LPA, yet at the same time seeks to prevent Defendants from invoking a legally enforceable arbitration clause included in the same LPA. Defendants have not waived their right to arbitrate and the arbitration clause is enforceable regardless of the LPA's rejection. Debtor's argument that the arbitration clause should be ignored because the LPA has been rejected is not legally supported and is contradicted by long standing bankruptcy precedent finding that arbitration provisions survive rejection of the underlying contract.

2

2. Debtor's claim that Defendants waived their right to arbitrate is equally groundless. Debtor accuses Defendants of waiving their arbitration rights as a result of their delay in asking the Court to send these claims to arbitration. Debtor, however, just recently filed its Amended Complaint, asserting five new claims, on August 27, 2021. And it is these new claims that Defendants are seeking to arbitrate. Defendants filed their Motion on September 2, 2021 in immediate response to Debtor's Amended Complaint. By arguing that Defendants waived their right to compel arbitration on these new claims, Debtor is suggesting that Defendants should have been clairvoyant and somehow anticipated Debtor's new claims nearly a year in advance of their filing.

3. Specifically, Debtor argues that since it originally filed these Adversary Proceedings on January 22, 2021, before the confirmation hearing, "the Dondero Defendants certainly knew at that point that they were (eventually) going to raise an affirmative defense" and that "[i]f the Dondero Defendants believed that dispute was subject to the Arbitration Clause, they were obligated to raise that issue at plan confirmation." (Objection, fn. 7). In other words, Debtor's waiver argument is premised on the false idea that Defendants should have raised their right to arbitration as defenses to claims that had not yet even been asserted. Defendants each have valid defenses to the new claims of declaratory relief, breach of fiduciary duty, and aiding and abetting breach of fiduciary duty that are rooted in non-core state contract law and the LPA. These defenses (and the right to arbitrate these new claims and defenses) could not exist before Debtor filed its Amended Complaint, and therefore, Defendants could not have waived their right to arbitrate.

## II.    ARGUMENT

4. This Court should compel arbitration as to Claims V, VI, and VII of the Amended Complaint, which involve legal rights or remedies arising from the LPA and governed by an enforceable arbitration clause because: (1) the arbitration clause survived Debtor's rejection of the LPA; and (2) Defendants have not waived their rights to arbitrate. As a result, the Court does not

3

have discretion to refuse to compel the arbitration of these non-core claims of declaratory relief, breach of fiduciary, and aiding and abetting breach of fiduciary duty asserted in Claims V, VI, and VII.

A.      **The Arbitration Clause Survived Debtor's Rejection of the LPA.**

5.      While Defendants do not dispute that Debtor rejected the LPA, Debtor's rejection of the LPA did not void the arbitration clause. Bankruptcy courts consistently hold that an arbitration provision is a separate undertaking from the underlying contract and thereby survives the debtor's rejection of the underlying contract. *See, e.g., In re Paragon Offshore PLC*, 588 B.R. 735, 749 (Bankr. D. Del. 2018) (the rejection of an executory contract does not erase the contractual obligation parties agree to under an arbitration provision because rejection is only "a breach of a contract, and the terms of the contract still control the relationship of the parties."); *see also In re Fleming Companies, Inc.*, 325 B.R. 687, 693 (Bankr. D. Del. 2005) (compelling arbitration despite the rejection, or breach, of the underlying agreement); *see also In re Monge Oil Corp.*, 83 B.R. 305, 308 (Bankr. E.D. Pa. 1988) ("Rejection [of an executory contract] does not make the contract null and void ab initio; it simply protects the estate from assuming contractual obligations on a priority, administrative basis. . . .Thus, it may not follow from § 365(g)(1) that a rejection of a contract voids a compulsory arbitration clause."); *see also Societe Nationale Algerienne Pour La Recherche v. Distrigas Corp.*, 80 B.R. 606, 609 (D. Mass.1987) (an arbitration provision is a separate undertaking which survives debtor's rejection of the underlying agreement).

6.      In its Objection, Debtor relies solely on one receivership case, *Janvey v. Alguire*,[1] to support its argument that an arbitration agreement does not survive rejection of the underlying executory contract. That case, however, is factually and legally distinguishable from the circumstances of this Chapter 11 bankruptcy proceeding and these adversary proceedings. In *Janvey*,

---

[1] No. 3:09-CV-0724-N, 2014 WL 12654910, at *4 (N.D. Tex. July 30, 2014), aff'd, 847 F.3d 231 (5th Cir. 2017)

4

a receiver separately rejected both arbitration agreements and the underlying contract. *See Janvey v. Alguire*, No. 3:09-CV-0724-N, 2014 WL 12654910, at *10 (N.D. Tex. July 30, 2014), aff'd, 847 F.3d 231 (5th Cir. 2017). The rejection of the severable agreements occurred automatically under receivership law. *Id.* ("receivership caselaw is clear that federal equity receivers are under no obligation to affirmatively reject an executory contract."). In the receivership context, "[t]here is a presumption that the receiver will not adopt a contract. If he does, it is a voluntary act of his own, to be performed with promptness. . ." *Id.* The *Janvey* court compares this presumption to Chapter 7 liquidations bankruptcy law, in which a contract is deemed rejected "within 60 days after the order for relief, or within such additional time as the court, for cause, within such 60-day period" if the trustee does not explicitly assume or reject the executory contract or unexpired lease. *See id.* However, this is a Chapter 11 proceeding, and the Code does not provide for automatic rejection of arbitration agreements.[2] Bankruptcy Code Section 365(d) clearly differentiates the rejection of executory contracts and unexpired leases in each chapter:

> (1) In a case under chapter 7 of this title, if the trustee does not assume or reject an executory contract or unexpired lease of residential real property or of personal property of the debtor within 60 days after the order for relief, or within such additional time as the court, for cause, within such 60-day period, fixes, then such contract or lease is deemed rejected.
>
> (2) In a case under chapter 9, 11, 12, or 13 of this title, the trustee may assume or reject an executory contract or unexpired lease of residential real property or of personal property of the debtor at any time before the confirmation of a plan but the court, on the request of any party to such contract or lease, may order the trustee to determine within a specified period of time whether to assume or reject such contract or lease.

11 U.S.C. § 365 (2020).

7. The *Janvey* court ultimately concluded "that arbitration agreements must be analyzed as separate executory contracts, based on the nature of the agreement as well as arbitration caselaw

---

[2] *See Matter of Provider Meds, L.L.C.*, 907 F.3d 845, 851 (5th Cir. 2018) ("Under most bankruptcy chapters, the trustee may assume or reject an executory contract at any point before the plan is confirmed, but the rule is different for Chapter 7 cases.").

regarding severability." *Id.* (finding the separate nature of arbitration agreements "persuasive and applicable in the equity receivership context."). Additionally—as Debtor footnotes in its Objection—the *Janvey* court specifically states that "many courts have held that arbitration clauses are severable agreements that survive rejection of the underlying executory contract." *Id.* at *9, fn. 28. (citing *Societe Nationale Algerienne*, 80 B.R. at 609).

8.  The argument that Debtor's unilateral termination of the LPA voids the arbitration clause also fails because Debtor may not invalidate the freely negotiated arbitration clause, particularly when applied to pre-petition or pre-rejection acts, as is the case here.

> To allow a party to avoid arbitration by simply terminating the contract would render arbitration clauses illusory and meaningless…. A party not wishing to arbitrate its alleged breach could simply terminate that contract and avoid any obligation to arbitrate. Similar rational applies when a debtor rejects a contract. A rejection in bankruptcy does not alter the substantive rights of the parties that formed pre-petition…. **While a debtor may reject a contract in its "entirety," it may not invalidate freely negotiated methods of dispute resolution [such as arbitration provisions] as they apply to pre-petition acts.**

*In re Fleming Companies, Inc.*, 325 B.R. at 693 (emphasis added) (quoting *Se. PA Transp. Auth. v. AWS Remediation, Inc.*, No. CIV.A. 03-695, 2003 WL 21994811, at *3 (E.D. Pa. Aug. 18, 2003)). Rejection of a contract, or even breach of it, will not void an arbitration clause, but may only affect the arbitrability of events that occur after the date of rejection and cannot change the remedial limitations applied to pre-rejection events. *See Id.* at 693–94; *see also Se. PA Transp. Auth.*, 2003 WL 21994811, at *3. Accordingly, the *Janvey* decision does not support the proposition that Debtor's rejection of the LPA was also a rejection and/or nullification of the arbitration clause.

**B.  <u>Defendants Did Not Waive Their Right to Arbitrate.</u>**

9.  Defendants did not and could not waive their right to arbitrate because Defendants invoked their right to arbitrate the newly asserted claims as soon as they possibly could. In fact, it would have been impossible for Defendants to have asserted their right to arbitrate any earlier. Defendants invoked their rights to arbitrate the newly asserted claims immediately after the new

6

claims were asserted. Specifically, Debtor filed the Amended Complaint, asserting the new claims for the first time, on August 27, 2021, and Defendants promptly asserted their right to arbitrate on September 2, 2021. In spite of this, Debtor argues, without any legal support, that Defendants somehow waived their right to arbitration because they never sought to insert a provision into prior Stipulations revealing that Defendants were contemplating arbitration of any claims or defenses or advised the Court and Debtor that they would seek to arbitrate any claims or defenses. But Debtor had equal access to the LPA and certainly should have known, when it brought claims arising under it that Defendants might invoke its arbitration clause. It is not Defendants' responsibility to make that decision prior to the time it was required to answer or otherwise move against the Amended Complaint.

10. Debtor also argues that Defendants have sought and accepted discovery that is impermissible under the arbitration clause and that this somehow also acts as a waiver of the arbitration clause. In the Fifth Circuit, a waiver of arbitration is disfavored, but may be found when a party substantially invokes the judicial process and causes detriment or prejudice to the other party. *In re Trevino*, 599 B.R. 526, 550 (Bankr. S.D. Tex. 2019). "The party claiming waiver of arbitration bears a heavy burden, and there is a strong presumption against finding a waiver. **Any doubts must be resolved in favor of arbitration**." *Id.* (emphasis added); *see also Cooper v. WestEnd Capital Mgmt., L.L.C.*, 832 F.3d 534, 542 (5th Cir. 2016) ("there is a strong presumption against finding a waiver of arbitration"); *see also Keytrade USA, Inc. v. Ain Temouchent M/V*, 404 F.3d 891, 897 (5th Cir. 2005) (noting presumption against waiver is "a well-settled rule in this circuit"). Courts have held that "[a]nswering claims on the merits, asserting a cross-claim or participating in discovery, without more, is insufficient to show a waiver." *See, e.g., In re Fleming Companies, Inc.*, 325 B.R. at 692. Debtor's argument is flawed because it ignores the fact that Defendants are not seeking to arbitrate the claims originally brought by Debtor, and the discovery served by Defendants relates to

7

those claims. In other words, regardless of whether Defendants are successful in compelling arbitration on the newly asserted claims, the discovery sought by Defendants was necessary to litigate the claims that will proceed in this Court. Accordingly, Debtor is unable to satisfy its heavy burden to establish waiver by proving prejudice by delay, expense, or damage to Debtor's legal position.

11. And even if the Court believed that Defendants actions earlier in the bankruptcy could constitute a waiver, Debtor's amendment of its complaint to add new claims would have revived Defendants' right to arbitrate. Debtor cites to Fifth Circuit cases comparing when the court has either declined to find waiver because the litigants invoked their rights to arbitration early and unequivocally or found waiver when litigants have failed to do so. None of these cases, however, include the factual scenario where a debtor files an amended complaint adding new claims and a party immediately moves to arbitrate these claims, as is the case here. An amended complaint that unexpectedly changes the scope or theory of claims revives a previously waived right to arbitration. *Forby v. One Techs., L.P.*, No. 20-10088, 2021 WL 4167262 *4-5 (5th Cir. 2021) (following Eleventh Circuit's decision in *Collado v. J & G Transport*, 820 F.3d 1256 (11th Cir. 2016)); *see also Krinsk v. SunTrust Banks, Inc.*, 654 F.3d 1194, 1202–03 (11th Cir. 2011). Accordingly, Defendants' motion to compel arbitration should be granted unless there is a new waiver based on defendant's failure to promptly seek arbitration following the filing of the amended complaint. *Krinsk v. SunTrust Banks, Inc.*, 654 F.3d 1194, 1203 (11th Cir. 2011). Here, there is no new waiver because Defendants promptly sought to compel arbitration.

12. For example, in *Forby v. One Techs.*, the defendant conceded it had previously waived its right to arbitrate the state law claims asserted in plaintiff's original complaint. *Forby v. One Techs., L.P.*, 2021 WL 4167262 *4-5. There, when plaintiff amended its complaint to add federal claims arising under the same operative facts as the previously asserted state law claims in the original complaint, the Fifth Circuit held that the defendant had not waived its rights to compel arbitration on

8

the federal claims. *Id.* This was because the federal claims were not in the case when the plaintiff waived the right to arbitrate the state claims. *Id.* The Fifth Circuit, following Eleventh Circuit authority rejected the notion that defendant "must. . . have known the [] claims were 'lurking in the case.' *Id.* (quoting *Collado v. J & G Transport*, 820 F.3d 1256, 1159-61 (11th Cir. 2016)). To the contrary, the Fifth Circuit held "a defendant will not be held to have waived the right to insist that previously unasserted claims be arbitrated once they are asserted. Otherwise, defendants would be in an awkward if not absurd position." *Id.*

13. Here, Debtor has failed to demonstrate prejudicial delay because the Motion was filed immediately following the Amended Complaint. Debtor argues that Defendants plainly violated the arbitration clause by seeking sweeping discovery. Specifically, Debtor notes that the arbitration clause contains express limitations on discovery and that Defendants have exceeded these limits. While the parties have conducted discovery, no discovery has been conducted strictly in connection with the newly asserted claims of the Amended Complaint. Therefore, Defendants have not engaged in discovery that exceeds the limitations of the arbitration clause.

C. **The Court Should Stay All Claims in Each Adversary Proceeding Pending Arbitration.**

14. Defendants requested this Court stay the original and/or non-arbitrable claims pending arbitration, and Debtor fails cite to any authority to refute Defendants' request to stay the proceedings pending arbitration. Debtor merely reiterates throughout its Objection that arbitration would be pointless, a waste of time, money, and judicial and arbitral resources. However, the parties have substantially completed discovery, and the arbitration proceedings would not require the full amount of discovery allotted under the LPA. It is well settled that "[t]he FAA allows the court to stay non-arbitrable claims where doing so will promote judicial economy or avoid conflicting rulings." *See, e.g., In re Fleming Companies, Inc.*, 325 B.R. at 695 (collecting cases). Accordingly, when newly asserted claims are derivative of plaintiff's originally asserted claims, it is appropriate for the court to

9

stay the non-arbitrable claims until arbitration of the other claims can be concluded. *See id*. Because Debtor's newly asserted claims for breach of fiduciary duty and declaratory relief under Claims V, VI, and VII are derivative of Debtor's originally asserted breach of contract and turnover claims under Claims I, and II—and also arise under the same operative facts—the Court should stay each of Debtor's claims against Defendants pending arbitration to promote judicial economy and to avoid conflicting rulings.

## III.    CONCLUSION

WHEREFORE, for the reasons above, Defendants respectfully request that this Court enter an order granting the relief set forth in the Motion and such other and further relied as may be just and necessary under the circumstances.

Dated: November 5, 2021                    Respectfully submitted,

*/s/Deborah Deitsch-Perez*
Deborah Deitsch-Perez
State Bar No. 24036072
Michael P. Aigen
State Bar No. 24012196
STINSON LLP
3102 Oak Lawn Avenue, Suite 777
Dallas, Texas 75219
(214) 560-2201 telephone
(214) 560-2203 facsimile
Email: deborah.deitschperez@stinson.com
Email: michael.aigen@stinson.com

**ATTORNEYS FOR JAMES DONDERO, NANCY DONDERO, HIGHLAND CAPITAL MANAGEMENT SERVICES, INC. AND NEXPOINT REAL ESTATE PARTNERS, LLC**

*/s/Clay M. Taylor*
Clay M. Taylor
State Bar No. 24033261
Bryan C. Assink
State Bar No. 24089009
BONDS ELLIS EPPICH SCHAFER JONES LLP
420 Throckmorton Street, Suite 1000
Fort Worth, Texas 76102
(817) 405-6900 telephone
(817) 405-6902 facsimile
Email: clay.taylor@bondsellis.com
Email: bryan.assink@bondsellis.com

**ATTORNEYS FOR JAMES DONDERO**

CORE/3522697.0002/170020733

*/s/Daniel P. Elms*
Daniel P. Elms
State Bar No. 24002049
GREENBERG TRAURIG, LLP
2200 Ross Avenue, Suite 5200
Dallas, Texas 75201
(214) 665-3600 telephone
(214) 665-3601 facsimile
Email: elmsd@gtlaw.com

**ATTORNEYS FOR NANCY DONDERO**

*/s/Douglas S. Draper*
Douglas S. Draper (La. Bar No. 5073)
Leslie A. Collins (La. Bar No. 14891)
Greta M. Brouphy (La. Bar No. 26216)
HELLER, DRAPER & HORN, L.L.C.
650 Poydras Street, Suite 2500
New Orleans, LA 70130
(504) 299-3300 telephone
(504) 299-3399 facsimile
Email: ddraper@hellerdraper.com
Email: lcollins@hellerdraper.com
Email: gbrouphy@hellerdraper.com

**ATTORNEYS FOR THE DUGABOY INVESTMENT TRUST**

## **CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that, on November 5, 2021, a true and correct copy of the foregoing document was served via the Court's CM/ECF system on all parties registered to receive notice in this case.

*/s/ Michael P. Aigen*
Michael P. Aigen

CORE/3522697.0002/170020733