| | |
|---|---|
| Clay M. Taylor<br>Bryan C. Assink<br>BONDS ELLIS EPPICH SCHAFER JONES LLP<br>420 Throckmorton Street, Suite 1000<br>Fort Worth, Texas 76102<br>(817) 405-6900 telephone<br>(817) 405-6902 facsimile<br>Email: clay.taylor@bondsellis.com<br>Email: bryan.assink@bondsellis.com<br><br>**Attorneys for James Dondero** | Deborah Deitsch-Perez<br>Michael P. Aigen<br>STINSON LLP<br>3102 Oak Lawn Avenue, Suite 777<br>Dallas, Texas 75219<br>(214) 560-2201 telephone<br>(214) 560-2203 facsimile<br>Email: deborah.deitschperez@stinson.com<br>Email: michael.aigen@stinson.com<br><br>**Attorneys for James Dondero, Nancy Dondero, Highland Capital Management Services, Inc. and NexPoint Real Estate Partners, LLC** |
| Daniel P. Elms<br>State Bar No. 24002049<br>GREENBERG TRAURIG, LLP<br>2200 Ross Avenue, Suite 5200<br>Dallas, Texas 75201<br>(214) 665-3600 telephone<br>(214) 665-3601 facsimile<br>Email: elmsd@gtlaw.com<br><br>**Attorneys for Nancy Dondero** | Douglas S. Draper (La. Bar No. 5073)<br>Leslie A. Collins (La. Bar No. 14891)<br>Greta M. Brouphy (La. Bar No. 26216)<br>HELLER, DRAPER & HORN, L.L.C.<br>650 Poydras Street, Suite 2500<br>New Orleans, Louisiana 70130<br>(504) 299-3300 telephone<br>(504) 299-3399 facsimile<br>Email: ddraper@hellerdraper.com<br>Email: lcollins@hellerdraper.com<br>Email: gbrouphy@hellerdraper.com<br><br>**Attorneys for The Dugaboy Investment Trust** |

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **In re:** | § | **Case No. 19-34054** |
| | § | |
| **HIGHLAND CAPITAL MANAGEMENT, L.P.** | § | **Chapter 11** |
| | § | |
| Debtor. | § | |

| | | |
|---|---|---|
| **HIGHLAND CAPITAL MANAGEMENT, L.P.,** | § | |
| | § | |
| Plaintiff. | § | |
| v. | § | **Adversary No. 21-03003-sgj** |
| | § | |
| **JAMES D. DONDERO, NANCY DONDERO, AND THE DUGABOY INVESTMENT TRUST,** | § | |
| | § | |
| Defendants. | § | |

| | | |
|---|---|---|
| **HIGHLAND CAPITAL MANAGEMENT, L.P.,** | § | |
| | § | |
| Plaintiff. | § | |
| v. | § | **Adversary No.: 21-03005-sgj** |
| | § | |
| **NEXPOINT ADVISORS, L.P., JAMES DONDERO, NANCY DONDERO, AND THE DUGABOY INVESTMENT TRUST,** | § | |
| | § | |
| Defendants. | § | |

| | | |
|---|---|---|
| **HIGHLAND CAPITAL MANAGEMENT, L.P.,** | § § § | |
| Plaintiff. | § § | |
| v. | § § | **Adversary No.: 21-03006-sgj** |
| **HIGHLAND CAPITAL MANAGEMENT SERVICES, INC., JAMES DONDERO, NANCY DONDERO, AND THE DUGABOY INVESTMENT TRUST,** | § § § § § § | |
| Defendants. | § | |
| **HIGHLAND CAPITAL MANAGEMENT, L.P.,** | § § § | |
| Plaintiff. | § § | |
| v. | § § | **Adversary No.: 21-03007-sgj** |
| **HCRE PARTNERS, LLC (n/k/a NEXPOINT REAL ESTATE PARTNERS, LLC), JAMES DONDERO, NANCY DONDERO AND THE DUGABOY INVESTMENT TRUST,** | § § § § § | |
| Defendants. | § | |

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ........................................................................................................ 1

II. ARGUMENT .............................................................................................................. 2

    A. Declaratory Relief is Not Appropriate. ............................................................. 2

        1. Plaintiff Presents No Actual Controversy. ............................................. 2

        2. Dugaboy's Agreement Provided for the Possibility the Notes Would be Forgiven. ........................................................................... 3

        3. Plaintiff Cannot use Declaratory Relief to Proclaim Liability for a Past Act. ................................................................................................ 3

        4. Plaintiff Cannot Use Declaratory Judgment to Settle a Dispute Already Before the Court. .................................................................... 4

    B. Plaintiff's Argument That When its Claims Accrued is Irrelevant is Unfounded... 5

    C. Dugaboy Did Not Exercise Control Over Plaintiff Sufficient to Incur any Fiduciary Duties. ................................................................................................................ 7

    D. Plaintiff's Aiding and Abetting Claim is Insufficient. ........................................... 9

III. CONCLUSION ........................................................................................................ 11

i

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Amaysing Techs. Corp. v. Cyberair Communications, Inc.*,
CIV.A. 19890-NC, 2005 WL 578972 (Del. Ch. Mar. 3, 2005) ................................................10

*Bauer v. Texas*,
341 F.3d 352 (5th Cir. 2003) ......................................................................................................4

*In re Draw Another Circle*,
602 B.R. 878 (Bankr. D. Del. 2019) .....................................................................................9, 10

*Frye v. Anadarko Petroleum Corp*,
953 F.3d 285 (5th Cir. 2019) .....................................................................................................2

*Gilbert v. El Paso Co.*,
490 A.2d 1050 (Del. Ch. 1984), aff'd, 575 A.2d 1131 (Del. 1990) ........................................10

*Haggard v. Bank of the Ozarks*,
547 F.App'x 616 (5th Cir. 2013) ...............................................................................................3

*In re Highland Group, Inc.*,
136 B.R. 475 (Bankr. N.D. Ohio 1992) .....................................................................................7

*Hosp. Internists of Austin, P.A. v. Quantum Plus, LLC*,
1:18-CV-466-RP, 2019 WL 1922051 (W.D. Tex. Jan. 23, 2019) .........................................3, 4

*Matter of Jartran, Inc.*,
732 F.2d 584 (7th Cir. 1984) .....................................................................................................6

*KE Prop. Mgmt. Inc. v. 275 Madison Mgmt. Corp*,
CIV. A. 12683, 1993 WL 285900 (Del. Ch. July 27, 1993) ......................................................9

*Kelly Inv., Inc. v. Cont'l Common Corp.*,
No. CIV. A. 01-609, 2001 WL 630467 (E.D. La. June 5, 2021) ...............................................3

*Kougl v. Xspedius Mgmt. Co.*,
No. 3:04-CV-2518-D, 2005 WL 1421446 (N.D. Tex. June 1, 2005) ........................................5

*In re Krisu Hosp., LLC*,
19-20347-RLJ11, 2021 WL 1186483 (Bankr. N.D. Tex. Mar. 26, 2021),
*reconsideration denied*, 19-20347-RLJ11, 2021 WL 3232574 (Bankr. N.D.
Tex. July 29, 2021) .................................................................................................................5, 6

*Lauter v. Citgo Petroleum Corp.*,
CV H-17-2028, 2018 WL 801601 (S.D. Tex. Feb. 8, 2018) ..................................................5, 7

*In re Mammoth Mart, Inc.*,
 536 F.2d 950 (1st Cir. 1976)...................................................................................................7

*MedImmune, Inc. v. Grenetech, Inc.*,
 549 U.S. 118 (2008).................................................................................................................2

*Merritt, Hawkins & Assocs., LLC v. Gresham*,
 2014 WL 685557 (N.D. Tex. Feb. 21, 2014)........................................................................4, 5

*Nelson Radio & Supply Co. v. Motorola, Inc.*,
 200 F.2d 911 (5th Cir. 1952) .................................................................................................10

*In re Pan Am. Hosp. Corp.*,
 364 B.R. 839 (Bankr. S.D. Fla. 2007).....................................................................................7

*In re Parker*,
 264 B.R. 685 (B.A.P. 10th Cir. 2001), *aff'd*, 313 F.3d 1267 (10th Cir. 2002)........................7

*In re Sunarhauserman, Inc.*,
 126 F.3d 811 (6th Cir. 1997) ...................................................................................................6

*Trahan v. Lazar*,
 457 F.Supp.3d 323 (S.D.N.Y. 2020).......................................................................................9

*In re USACafes, L.P. Litig.*,
 600 A.2d 43 (Del. Ch. 1991)...................................................................................................9

*In re USDigital, Inc.*,
 443 B.R. 22 (Bankr. D. Del. 2011) .......................................................................................10

*UST-Mamiya, Inc. v. True Sports, Inc.*,
 441 F. Supp. 3d 382 (N.D. Tex. 2020) ...................................................................................4

*Venator Group Specialty, Inc. v. Matthew/Muniot Family, LLC.*,
 322 F.3d 835 (5th Cir. 2003) ..................................................................................................3

*Watson v. Citimortgage, Inc.*,
 814 F.Supp.2d 726 (E.D. Tex. 2011).....................................................................................3

*Weinberger v. Rio Grande Industries, Inc.*,
 519 A.2d 116 (Del. Ch. 1986)...............................................................................................10

*Wheeler v. Magdovitz (In re Wheeler)*,
 137 F.3d 299 ............................................................................................................................7

iv

**Statutes**

11 U.S.C. § 101(5) ...................................................................................................................7

11 U.S.C. § 101(5)(A) ..............................................................................................................7

11 U.S.C. § 365 ........................................................................................................................7

11 U.S.C. § 503 ................................................................................................................5, 6, 7

11 U.S.C. § 523 ........................................................................................................................7

Del. Code Ann. Tit. 6, § 17-303(b)(8)(o) ..........................................................................1, 8, 9

**REPLY IN SUPPORT OF DEFENDANTS' RULE 12(b)(6) MOTION TO DISMISS PLAINTIFF'S FIFTH, SIXTH, AND SEVENTH CLAIMS FOR RELIEF**

Defendants file this reply (the "Reply") in support of their Rule 12(b)(6) Motion (the "Motion") to Dismiss Plaintiff's Fifth, Sixth, and Seventh Claims for Relief as follows.

## I. INTRODUCTION

1. <u>First</u>, with respect to the Declaratory Judgement Claim, Plaintiff still shows no controversy, a necessary element when seeking declaratory relief. The LPA explicitly gives Dugaboy the right to approve compensation in § 3.10(a). Because Dugaboy was explicitly permitted to approve compensation in the LPA, doing so does not result in a justiciable controversy. Further, Plaintiff's request for declaratory relief is improper because it seeks to establish Defendants' liability for a past act and to settle matters otherwise already before this Court.

2. <u>Second</u>, Plaintiff relies on inapposite cases to attempt to challenge Defendants' straightforward argument that Plaintiff lacks standing to pursue post-petition claims against them that arise out of a contract that Plaintiff rejected.

3. <u>Third</u>, because Dugaboy did not take an active role in the control or management of Plaintiff that would impose fiduciary duties on a limited partner, Plaintiff's authority is inapposite. Rather, Del. Code Ann. Tit. 6, § 17-303(b)(8)(o), which defines control of a business, is dispositive.

4. <u>Finally</u>, Plaintiff's Seventh Claim does not plausibly state a claim for aiding and abetting breach of fiduciary duty against Jim or Nancy Dondero. Plaintiff does not sufficiently allege knowing participation by the Donderos, and its position that Nancy Dondero aided or abetted her own actions is nonsensical.

## II. ARGUMENT

### A. Declaratory Relief is Not Appropriate.

#### 1. **Plaintiff Presents No Actual Controversy.**

5. Plaintiff argues that the "heart of this Claim" is whether or not Dugaboy had authority to make the Agreement and approve compensation under the LPA. (Response, ¶ 27). But there is no doubt that entering into the Agreement – and thus approving compensation – is exactly what Dugaboy could do.[1]

6. Plaintiff's reliance on cases like *Frye v. Anadarko Petroleum Corp*, 953 F.3d 285 (5th Cir. 2019) and *MedImmune, Inc. v. Grenetech, Inc.*, 549 U.S. 118 (2008) underscore the fallacy in Plaintiff's position.[2] In *Frye*, the plaintiff asked the court to determine whether disclosing a letter she received from the SEC would violate her nondisclosure agreement with the defendant corporation while she was under threat of litigation for doing so. *Id.* Accordingly, the court found that "threats in *MedImmune* and *Vantage* Trailers [regarding threatened litigation] . . .were both sufficiently immediate to create a justiciable controversy, [and] are analogous to the threats that [defendant] made to Frye." *Id.* at 295. Likewise, in a case addressing whether or not a patent licensee must either terminate or breach its license agreement before it could seek declaratory judgment, the Supreme Court in *Medimmune* found that "[the] petitioner was not required…to break or terminate its 1997 license agreement before seeking a declaratory judgment in federal court that the underlying patent is invalid, unenforceable, or not infringed." *Id*. at 137. Both cases involved actual disputes that a court could meaningfully address. Here however, the LPA simply leaves no room for a contention that Dugaboy lacked the power to enter into the Agreement and Plaintiff's response does not point to anything to the contrary.

CORE/3522697.0002/170703265

2. **Dugaboy's Agreement Provided for the Possibility the Notes Would be Forgiven.**

7. Plaintiff's argument that the Agreement was not contemplated by the LPA is unfounded. Section 3.10 of the LPA expressly allows Dugaboy to approve compensation and the Agreement did exactly that, by approving the conditions under which loans would be forgiven and become deferred compensation. This is no different than an agreement setting the terms under which a potential bonus would earned. Because Dugaboy's Agreement approved potential compensation, and the LPA expressly provides Dugaboy with the right to approve such compensation, there is no controversy to decide or rights to declare.

3. **Plaintiff Cannot use Declaratory Relief to Proclaim Liability for a Past Act.**

8. Plaintiff asks this Court to proclaim Defendant's liability for a past act, as opposed to some present or future conduct. But as shown by the very cases Plaintiff cites "…a claim for declaratory judgment seeks to define legal rights and obligations of the parties in anticipation of some future conduct, not proclaim liability for a past act." *Hosp. Internists of Austin, P.A. v. Quantum Plus, LLC*, 1:18-CV-466-RP, 2019 WL 1922051 at 4 (W.D. Tex. Jan. 23, 2019) (citing *Haggard v. Bank of the Ozarks*, 547 F.App'x 616, 620 (5th Cir. 2013)). Further, "in order for a

---

[1] LPA, § 3.10(a): "Compensation. The General Partner and any Affiliate of the General partner shall receive no compensation from the Partnership for services rendered pursuant to this Agreement or any other agreements unless approved by a Majority Interest (Dugaboy holds the majority of Class A interest in the LP); provided however, that no compensation above five million dollars per year may be approved, even by a Majority Interest, during a NAV Ratio Trigger Period." Further, the NAV Ratio Trigger Period extinguishes Plaintiff's argument that Dugaboy had a "blank check" regarding compensation, discussed *infra*.

[2] *See also Kelly Inv., Inc. v. Cont'l Common Corp.*, No. CIV. A. 01-609, 2001 WL 630467 (E.D. La. June 5, 2021) (applying Louisiana Civil Code to contract interpretation regarding plaintiff's claim for declaratory judgment where contractual provisions were in conflict with each other); *Watson v. Citimortgage, Inc.,* 814 F.Supp.2d 726, 738 (E.D. Tex. 2011) (court denied defendant's motion to dismiss declaratory judgment because the underlying breach of contract action upon which the controversy was based survived dismissal); *Venator Group Specialty, Inc. v. Matthew/Muniot Family, LLC.,* 322 F.3d 835 (5th Cir. 2003) (court finding ripeness of declaratory judgment action where terms of a commercial lease executed in 1938 and set to terminate in the near future were impossible to perform and that plaintiff's planned development of the building in the future could not go forward without declaratory relief was sufficient pleading).

court to grant declaratory relief, there must be a 'substantial and continuing controversy between two adverse parties' and 'a substantial likelihood that [a plaintiff] will suffer injury in the future.'" *Hosp. Internists* at 4 (citing *Bauer v. Texas*, 341 F.3d 352, 358 (5th Cir. 2003)).

9. Despite Plaintiff's reliance on *Hosp. Internists,* it instead provides support for Defendants' Motion. In *Hosp. Internists*, after dismissing plaintiff's first claim for declaratory judgment since declaratory relief cannot create a private right of action where none exists, the court upheld only plaintiff's second claim for declaratory judgment because as to that claim the plaintiff established its right to <u>future</u> payments and thus, <u>future</u> damages. *Id.* at 6. Here, Plaintiff contends it was damaged when Defendants did not pay their respective demand and term notes in December 2020,³ which are <u>events that have already occurred</u>. Because Plaintiff has no risk of impending harm, it is not entitled to declaratory relief.

### 4. <u>Plaintiff Cannot Use Declaratory Judgment to Settle a Dispute Already Before the Court.</u>

10. Plaintiff is impermissibly attempting to use declaratory judgment to settle a dispute that is otherwise already pending before this Court. "A request for declaratory judgment need not be permitted if it adds nothing to the suit," and "courts generally dismiss declaratory judgment claims seeking to resolve matters already pending before the court." *UST-Mamiya, Inc. v. True Sports, Inc.,* 441 F. Supp. 3d 382, 396 (N.D. Tex. 2020) (citing *Merritt, Hawkins & Assocs., LLC v. Gresham,* 2014 WL 685557, at 3 (N.D. Tex. Feb. 21, 2014)). In *Merritt*, the court dismissed a defendant's counterclaim seeking declaratory relief on certain provisions of a contract that was the basis for the plaintiff's breach of contract claim. *Id*. The court found that "[d]efendants'

---

³ All of Defendants' demand notes were called on December 11, 2020, *see* Am. Compl. ¶ 26, Adv. No. 21-03003 [Doc. 79]; Am. Compl. ¶ 28, Adv. No. 21-03007 [Doc. 63]; Am. Compl. ¶ 28, Adv. No. 21-03006 [Doc. 68]; and Debtor purported to accelerate Defendants term notes on or about January 7, 2020, *see* Am. Compl. ¶ 27, Adv. No. 21-03005 [Doc. 63]; Am. Compl. ¶ 42, Adv. No. 21-03006 [Doc 68]; Am. Compl. ¶ 43, Adv. No. 21-03007 [Doc. 63].

4

CORE/3522697.0002/170703265

counterclaims merely seek declaratory judgment on an issue already pending before the court [the enforceability of certain contractual provisions]," and dismissed the declaratory judgment counterclaim since the issues would ultimately be decided on the underlying claim.[4] *Id.* at 3.

11. Here, Plaintiff is attempting the same impermissible use of declaratory judgment attempted in *Merritt* by seeking declaratory relief after Defendants already raised the Agreement as an affirmative defense. By seeking a declaration from this Court that the Agreement is "null and void," Plaintiff does no more than ask the Court to adjudicate Defendants' affirmative defense, making its attempt to obtain declaratory relief improper.

**B. Plaintiff's Argument That When its Claims Accrued is Irrelevant is Unfounded.**

12. Plaintiff's argument that when its claims accrued is irrelevant to standing is based on inapposite authority. The only case provided to this Court addressing an estate's standing to bring claims under an executory contract it rejected is *Lauter v. Citgo Petroleum Corp.*, CV H-17-2028, 2018 WL 801601 (S.D. Tex. Feb. 8, 2018). None of the other cases in Plaintiff's Response address when a claim <u>brought by an estate accrues</u>; rather, they discuss when a <u>claim by a creditor against an estate accrues</u> for purposes of determining whether the claim will be considered an administrative expense and receive priority over other debts. Here, however, Plaintiff is an estate asserting claims under a rejected executory contract and does not have standing to do so under *Lauter*. Cases concerning when a claim is entitled to administrative expense priority are inapt.

13. In *In re Krisu Hosp., LLC,* the court addressed accrual of a claimant's tort claim for purposes of determining its administrative priority under 11 U.S.C. § 503 ("§ 503"). The court acknowledged that "[e]xamination of when a liability arises – and not when the claim accrues –

---

[4] *See also, Kougl v. Xspedius Mgmt. Co.,* No. 3:04-CV-2518-D, 2005 WL 1421446, at 4 (N.D. Tex. June 1, 2005) (dismissing declaratory judgment action where the "questions [would] be resolved in the context of the breach of contract actions").

5

follows the statutory policy of encouraging third parties to engage in business with the debtor," when addressing the "business-problem policy" that "a transaction or act taken pre-petition that gives rise to liability does not induce anyone to do business with the debtor…" *In re Krisu Hosp., LLC,* 19-20347-RLJ11, 2021 WL 1186483 at 5 (Bankr. N.D. Tex. Mar. 26, 2021), *reconsideration denied*, 19-20347-RLJ11, 2021 WL 3232574 (Bankr. N.D. Tex. July 29, 2021). Because the issue in *In re Krisu Hosp., LLC* relates only to determining when a claim against an estate accrues for § 503 administrative priority purposes, it is inapposite to the facts in this case.

14.     Plaintiff's reliance on *In re Sunarhauserman* and *In re Jartran* is also misplaced. There, the Sixth Circuit looked to when a creditor's ERISA-related expense claims against an estate arose for purposes of determining if they had administrative priority under § 503, stating that "…the proper standard for determining [a] claim's *administrative priority* looks to when the acts giving rise to the liability took place, not when they accrued." *In re Sunarhauserman, Inc.*, 126 F.3d 811, 818 (6th Cir. 1997) (emphasis added). That same court looked to the Seventh Circuit's *In re Jartran, Inc.*, – as did Plaintiff – for guidance on the irrelevant issue of § 503(b) claim administration. The court explained:

> "[t]hat the ads were published post-petition, and that the actual payment was made post-petition, was irrelevant to determining when the claim arose for purposes of § 503(b)(1)(A) priority. Instead, the court focused on when the commitment to place and pay for the ads occurred. In so doing, the *Jartran* court emphasized that the purpose of § 503 is to grant priority only to the claims those entities who are induced to do business with the debtor *post-petition*. Such claims receive priority because they enable the estate to continue for the benefit of existing creditors."

*Id.* at 587, 588. (*In re Sunarhauserman,* citing *Matter of Jartran, Inc.*, 732 F.2d 584 (7th Cir. 1984)).

6

CORE/3522697.0002/170703265

The remainder of the cases cited by Plaintiff are similar and are therefore inapposite to this issue of whether a debtor has standing to bring post-petition claims against a party under a rejected executory contract.[5]

15. The only analogous case addressing Plaintiff's ability to bring a claim for a post-petition action under a rejected executory contract is *Lauter*. Plaintiff's Fifth, Sixth, and Seventh claims asserted under the LPA all accrued post-rejection (and thus, post-petition) under 11 U.S.C. § 365. As noted in *Lauter*, "Plaintiff has not cited and the court has not found any authority allowing a debtor's estate…to pursue claims for post-petition breaches of a rejected contract." *Id.* at 15. Therefore, Plaintiff lacks standing to bring claims arising under the rejected LPA.

**C.    Dugaboy Did Not Exercise Control Over Plaintiff Sufficient to Incur any Fiduciary Duties.**

16. Plaintiff's assertion that Dugaboy controlled Plaintiff's business by approving compensation as prescribed in the LPA is little more than *ipse dixit*. While it contends that Dugaboy's Agreement is "precisely the type of circumstance in which courts impose fiduciary duties on limited partners," it provides no persuasive authority (Response ¶ 44) and largely ignores the only relevant authority, the Delaware Revised Uniform Limited Partnership Act (the "Delaware Act"). [6]

---

[5] *In re Highland Group, Inc.*, 136 B.R. 475, 480-481 (Bankr. N.D. Ohio 1992) (disallowing creditor's administrative claim against the estate for indemnification where creditor sought indemnification under an agreement entered into prepetition was considered a prepetition claim not entitled to administrative priority under § 503(b), noting that "the purpose of [§ 503] of the Bankruptcy Code is to facilitate the rehabilitation of insolvent business by encouraging third parties to provide those businesses with necessary goods and services.") (citing *In re Mammoth Mart, Inc.,* 536 F.2d 950, 954 (1st Cir. 1976)); *In re Parker,* 264 B.R. 685 (B.A.P. 10th Cir. 2001), aff'd, 313 F.3d 1267 (10th Cir. 2002) (discussing whether a creditor had a malpractice claim under 11 U.S.C. § 101(5)(A) against a no-asset Chapter 7 bankruptcy estate and it's dischargeability under 11 U.S.C. § 523); *In re Pan Am. Hosp. Corp.*, 364 B.R. 839 (Bankr. S.D. Fla. 2007) (discussing accrual of creditor's medical malpractice claim against estate for damages under 11 U.S.C. § 101(5) and rejecting state law accrual theory when determining claim's existence by a creditor against an estate); *Wheeler v. Magdovitz (In re Wheeler)*, 137 F.3d 299 (applying Mississippi law to determine legal malpractice clam brought by a creditor against an estate occurred pre-petition).

[6] Ironically, when it suits it purpose, Plaintiff acknowledges the applicability of the Delaware Act. Am. Comp. p. 16, Adv. No. 21-03003 [Doc 79] ("On its Fifth Claim for Relief, a declaration that: (a) limited partners, including but not

7

17.     The Delaware Act could not be clearer: "[a] limited partner does not participate in the control of the business…[when acting on] such other matters as are stated in the partnership agreement or in any other agreement or in writing." Del. Code Ann. Tit. 6, § 17-303(b)(8)(o). While approving compensation involves paying money (i.e.: Plaintiff's property) to another entity or individual, under Delaware law, that act is not considered participating in control of a business if the authority to do so is delineated in the LPA. *See*, LPA 3.10(a). Further, Plaintiff's argument that "section 3.10 is not a 'bargained-for' right and that Dugaboy is not mentioned by name" is both irrelevant and inaccurate. (Response, fn. 16). The Agreement itself shows the "bargain" and Dugaboy is referenced by Section's 3.10's reference to approval by the "Majority Interest," which is defined as "the owners of more than . . .50% of the "Class A Limited Partners"[7] which is then defined as those partners "holding Class A Limited Partnership Interest, as shown on Exhibit A,"[8] which shows Dugaboy as the 74.442% owner of such interest.[9]

18.     The assertion that Dugaboy had "boundless authority" (Response, ¶ 41) over compensation and that it exercised "control" or governance over Plaintiff's business by being authorized to approve such is unfounded. Rather, the LPA specifically limited Dugaboy's authority by not allowing it to approve compensation exceeding five million dollars per year during a NAV Ratio Trigger Period.[10] LPA § 3.10(a).

---

limited to Dugaboy, have no right or authority to take part in the control (*within the meaning of the Delaware Act*) of the Partnership's business…") (emphasis added).

[7] LPA § 2.1, "Majority Interest"

[8] LPA, "Exhibit A"

[9] *Id.*

[10] NAV Ratio Trigger Period is discussed in the LPA § 2.1 "Definitions," and essentially states a benchmark for when the Partnership's assets would become too low to justify paying more than $5,000,000 per year in compensation to the General Partner or Affiliates.

8

19. Further, Plaintiff's reliance on dicta from *In re USACafes, L.P. Litig.*, 600 A.2d 43, 48 (Del. Ch. 1991) that "one who controls property of another may not…intentionally use that property in a way that benefits the holder of the control…" and "—a fiduciary may not waste property even if no self-interest is involved…" is inapplicable. (Response, ¶ 39). Neither Dugaboy nor Nancy Dondero benefitted from the Agreement to the detriment of Plaintiff, nor did they waste property by approving compensation as discussed *infra*.

20. Both *Trahan v. Lazar*, 457 F.Supp.3d 323 (S.D.N.Y. 2020), and *KE Prop. Mgmt. Inc. v. 275 Madison Mgmt. Corp*, CIV. A. 12683, 1993 WL 285900 (Del. Ch. July 27, 1993) are also inapposite. In *Lazar*, the court found that where limited partners served on the board of their general partner and had "control over the conduct of their own divisions," the limited partners took an "active role" in management of the partnership. *Id*. at 346. In *KE Prop. Mgmt.*, the court questioned whether a limited partner controlled by the same entity that controls the general partner might thereby acquire fiduciary duties as a result of the common control, but never decided the issue. *Id*. at 8. Unlike the limited partner in *Lazar*, Dugaboy did not exclusively control any division within Plaintiff's organization, and the court in *KE Prop. Mgmt*. never ruled on the issue of common controlling entities. Therefore, Plaintiff's cases are unhelpful to its position.

21. In sum, because under Del. Code Ann. Tit. 6, § 17-303(b)(8)(o) Dugaboy's authority to approve compensation cannot be considered control of Plaintiff, Plaintiff fails to state a plausible claim for breach of fiduciary duty.

**D.     Plaintiff's Aiding and Abetting Claim is Insufficient.**

22. Plaintiff's position that the Donderos are subject to aiding and abetting liability fails for several reasons. First, the Donderos cannot aid and abet a breach of fiduciary duty that did not arise. *In re Draw Another Circle*, 602 B.R. 878, 904 (Bankr. D. Del. 2019).

9

23. Second, Plaintiff's position that Nancy Dondero was a third party to her own action as Dugaboy trustee is nonsensical. That Nancy Dondero cannot aid and abet her own self as trustee of Dugaboy is based on a common sense reading of the analogous law and comparisons provided in the Motion. The dearth of jurisprudence should not be surprising because aiding and abetting by definition requires someone to aid and abet.[11] However, civil conspiracy cases are instructive[12] Because "[i]t is the basic law of conspiracy that you must have two persons or entities to have a conspiracy…[a] corporation cannot conspire with itself any more than a private individual can," and because civil conspiracy has been equated with aiding and abetting in Delaware, it is even more clear that Nancy Dondero could not have aided and abetted any of her own acts as Dugaboy trustee.[13]

24. Plaintiff's conclusory pleadings that the Donderos were aware Dugaboy would incur a fiduciary duty by acting to bind Plaintiff (which it did not, as discussed *supra*), and that the Donderos' tortious action was simply the Agreement itself, lacks any showing of knowing participation, as Plaintiff conflates knowledge of the Agreement with affirmative abetting action. *In re Draw* at 904 (requiring a showing of scienter and knowing participation on behalf of parties alleged to have aided and abetted). Thus, Plaintiff's Seventh Claim should be dismissed.

---

[11] Aiding and abetting a breach of fiduciary duty requires a showing of (i) the existence of a fiduciary relationship; (ii) a breach of that relationship; (iii) knowing participation in the breach by a defendant who is not a fiduciary; and (iv) damages proximately caused from the concerted action of the fiduciary and the non-fiduciary. *In re USDigital, Inc.*, 443 B.R. 22, 46 (Bankr. D. Del. 2011).

[12] *Weinberger v. Rio Grande Industries, Inc.,* 519 A.2d 116, 131 (Del. Ch. 1986) ("A claim for civil conspiracy (sometimes called 'aiding and abetting') requires that three elements be alleged…"); *Gilbert v. El Paso Co.,* 490 A.2d 1050, 1057 (Del. Ch. 1984), aff'd, 575 A.2d 1131 (Del. 1990) (applying the same elements for civil conspiracy that are required for aiding and abetting).

[13] *Amaysing Techs. Corp. v. Cyberair Communications, Inc.*, CIV.A. 19890-NC, 2005 WL 578972 at 7 (Del. Ch. Mar. 3, 2005) (citing to *Nelson Radio & Supply Co. v. Motorola, Inc.*, 200 F.2d 911, 913 (5th Cir. 1952)).

### III. CONCLUSION

25. Defendants request that the Court dismiss Plaintiff's Fifth, Sixth, and Seventh Claims for failure to state a claim upon with relief can be granted under Federal Rule of Civil Procedure 12(b)(6).

Dated: November 5, 2021

Respectfully submitted,

*/s/Deborah Deitsch-Perez*
Deborah Deitsch-Perez
State Bar No. 24036072
Michael P. Aigen
State Bar No. 24012196
STINSON LLP
3102 Oak Lawn Avenue, Suite 777
Dallas, Texas 75219
(214) 560-2201 telephone
(214) 560-2203 facsimile
Email: deborah.deitschperez@stinson.com
Email: michael.aigen@stinson.com

**ATTORNEYS FOR JAMES DONDERO, NANCY DONDERO, HIGHLAND CAPITAL MANAGEMENT SERVICES, INC. AND NEXPOINT REAL ESTATE PARTNERS, LLC**

*/s/Clay M. Taylor*
Clay M. Taylor
State Bar No. 24033261
Bryan C. Assink
State Bar No. 24089009
BONDS ELLIS EPPICH SCHAFER JONES LLP
420 Throckmorton Street, Suite 1000
Fort Worth, Texas 76102
(817) 405-6900 telephone
(817) 405-6902 facsimile
Email: clay.taylor@bondsellis.com
Email: bryan.assink@bondsellis.com

**ATTORNEYS FOR JAMES DONDERO**

11

*/s/Daniel P. Elms*
Daniel P. Elms
State Bar No. 24002049
GREENBERG TRAURIG, LLP
2200 Ross Avenue, Suite 5200
Dallas, Texas 75201
(214) 665-3600 telephone
(214) 665-3601 facsimile
Email: elmsd@gtlaw.com

**ATTORNEYS FOR NANCY DONDERO**

*/s/Douglas S. Draper*
Douglas S. Draper (La. Bar No. 5073)
Leslie A. Collins (La. Bar No. 14891)
Greta M. Brouphy (La. Bar No. 26216)
HELLER, DRAPER & HORN, L.L.C.
650 Poydras Street, Suite 2500
New Orleans, LA 70130
(504) 299-3300 telephone
(504) 299-3399 facsimile
Email: ddraper@hellerdraper.com
Email: lcollins@hellerdraper.com
Email: gbrouphy@hellerdraper.com

**ATTORNEYS FOR THE DUGABOY INVESTMENT TRUST**

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that, on November 5, 2021, a true and correct copy of the foregoing document was served via the Court's CM/ECF system on all parties registered to receive notice in this case.

*/s/ Michael P. Aigen*
Michael P. Aigen