TRUST AGREEMENT


Between


DANA SCOTT BREAULT,
Settlor


and


JAMES D. DONDERO and
COMMONWEALTH TRUST COMPANY,
Trustees


THE DUGABOY INVESTMENT TRUST


WINSTEAD PC
DALLAS, TEXAS

Exhibit
10

App. 62

THE DUGABOY INVESTMENT TRUST

TABLE OF CONTENTS

PAGE

ARTICLE I  DEFINITIONS ...........................................................................................1
    1.1    Settlor...........................................................................................1
    1.2    Jim................................................................................................1
    1.3    Trustees ......................................................................................1
    1.4    Children.......................................................................................1
    1.5    Descendants ................................................................................1
    1.6    Code ............................................................................................1
    1.7    Per Stirpes ..................................................................................1

ARTICLE II  FUNDING ................................................................................................2

ARTICLE III  DISTRIBUTION OF PRINCIPAL AND INCOME ...........................2
    3.1    Trust for Jim................................................................................2
    3.2    Trust for Child.............................................................................5
    3.3    Trusts for Descendants................................................................6
    3.4    Contingent Distribution ..............................................................9
    3.5    General Power of Appointment for Certain Beneficiaries.........9
    3.6    Postponement of Distribution ..................................................10

ARTICLE IV  PROVISIONS AFFECTING DISTRIBUTION.................................10
    4.1    Withdrawal Right......................................................................10
    4.2    Restriction Upon Alienation .....................................................12
    4.3    Distributions Constitute Separate Property................................12
    4.4    Method of Payment....................................................................12
    4.5    Evidence of Need.......................................................................12
    4.6    Termination of Small Trust........................................................12
    4.7    Generation-Skipping Transfer Taxes and Payment ..................13

ARTICLE V  THE TRUSTEE ......................................................................................13
    5.1    Resignation of Trustee ..............................................................13
    5.2    Appointment and Succession of Trustees..................................14
    5.3    Removal of Trustee....................................................................16
    5.4    Succession of Corporate Trustee ..............................................16
    5.5    Trustee's Fees ............................................................................16
    5.6    Bond...........................................................................................16
    5.7    Liability of Trustee. ..................................................................16
    5.8    Predecessor Fiduciary ...............................................................18
    5.9    Periodic Accounting..................................................................18
    5.10  Beneficiary under Disability .....................................................19
    5.11  Incapacity of Individual Trustee ...............................................19

ARTICLE VI  TRUST ADMINISTRATION ..............................................................19

App. 63

## TABLE OF CONTENTS
### (Continued)

PAGE

| | | |
|---|---|---|
| 6.1 | General Powers | 19 |
| 6.2 | Division of Powers | 24 |
| 6.3 | Merger of Trusts | 25 |
| 6.4 | Certain Powers and Rights Limited | 25 |
| 6.5 | GST Inclusion Ratio | 25 |
| 6.6 | Out-of-State Properties | 25 |
| 6.7 | Management of Real Property | 26 |
| 6.8 | No Court Supervision | 26 |
| 6.9 | Division of Trusts | 26 |
| 6.10 | Limitation of Powers | 26 |
| 6.11 | Dealing with Fiduciaries | 27 |

**ARTICLE VII IRREVOCABILITY** .......... 27

**ARTICLE VIII MISCELLANEOUS PROVISIONS** .......... 28

| | | |
|---|---|---|
| 8.1 | Applicable Law | 28 |
| 8.2 | Perpetuities Provision | 28 |
| 8.3 | Gestation | 28 |
| 8.4 | Survivorship | 29 |
| 8.5 | Release of Powers and Interests | 29 |
| 8.6 | Powers of Appointment | 29 |
| 8.7 | Liability of Third Party | 30 |
| 8.8 | Use of Words | 30 |
| 8.9 | Unenforceable Provision | 30 |
| 8.10 | Titles, Headings, and Captions | 30 |
| 8.11 | Counterpart Signatures | 30 |
| 8.12 | Trust Name | 30 |

App. 64

# THE DUGABOY INVESTMENT TRUST

AGREEMENT OF TRUST made and entered into at Dallas, Texas, this ____ day of October, 2010, by and between DANA SCOTT BREAULT, as Settlor, and JAMES D. DONDERO, and COMMONWEALTH TRUST COMPANY, as Trustees.

## ARTICLE I

### DEFINITIONS

The following terms, as used in this Trust Agreement, have the meanings set forth below, unless another meaning is clearly indicated by context or circumstances:

1.1 <u>Settlor</u>. "Settlor" means DANA SCOTT BREAULT.

1.2 <u>Jim</u>. "Jim" means JAMES D. DONDERO.

1.3 <u>Trustees</u>. The initial Trustee of each trust created hereunder is JAMES D. DONDERO. "Trustee" means any person or entity serving as Trustee, whether original or successor and whether one or more in number. "Administrative Trustee" means COMMONWEALTH TRUST COMPANY in its capacity as Administrative Trustee, and any successor Administrative Trustee appointed in accordance with Section 5.2(c). "Independent Trustee" means GRANT JAMES SCOTT, III, (upon his acceptance as set forth in Section 5.2(b)) in his capacity as Trustee, and any successor Independent Trustee appointed in accordance with Section 5.2(b). "Family Trustee" means JAMES D. DONDERO in his capacity as Trustee, and any successor Family Trustee appointed in accordance with Section 5.2(a). The rights, powers, duties, and obligations, of the Family Trustee, Independent Trustee and Administrative Trustee are to be exercised and allocated pursuant to Section 6.2 of this Trust Agreement.

1.4 <u>Children</u>. "Children" means REESE AVRY DONDERO, JAMESON DRUE DONDERO, and any other child born to or adopted by Jim after the date of this Trust Agreement. "Child" means one of the Children.

1.5 <u>Descendants</u>. "Descendants" means the legitimate children of the person designated and the legitimate lineal descendants of such children, and includes any person adopted before attaining age fifteen (15) and the adopted person's legitimate lineal descendants. A posthumous child shall be considered as living at the death of his parent.

1.6 <u>Code</u>. "Code" means the Internal Revenue Code of 1986, as amended, and corresponding provisions of future federal tax law.

1.7 <u>Per Stirpes</u>. "<u>Per Stirpes</u>," when used with respect to a distribution of property among a class of beneficiaries, shall mean by representation; that is, the Descendants of a deceased ancestor take the share such ancestor would have received had he or she been living, and the issue of a living ascendant would not take in competition with such ascendant. The <u>per</u>

App. 65

stirpital allocation shall commence with the most senior generation that has a living representative.

## ARTICLE II

### FUNDING

Settlor has transferred to the Trustee, without consideration, One Thousand and No/100 Dollars ($1,000.00) which shall be administered and distributed in accordance with the terms of this Trust Agreement. Settlor and others may transfer to the Trustee properties acceptable to them, to be added to the trust estate. The Trustee shall administer the initial trust estate pursuant to the terms of Section 3.1.

## ARTICLE III

### DISTRIBUTION OF PRINCIPAL AND INCOME

3.1    Trust for Jim.    The trust for the benefit of Jim shall be administered and distributed upon the following terms:

(a)    Distributions to Jim.    The Family Trustee may distribute to Jim so much of the net income and principal of the trust as the Family Trustee deems necessary to provide for Jim's maintenance, support and health.    Undistributed income shall be accumulated and added to principal.    In exercising its discretion, the Family Trustee shall take into account the following factors:

(i)    Jim is the primary beneficiary of the trust.

(ii)    The Family Trustee shall take into consideration in determining Jim's needs any other income or resources known upon reasonable inquiry by the Family Trustee to be available to Jim for these purposes.

(iii)    Settlor's intention to assist or enable Jim to obtain and furnish a home commensurate with his standard of living.

(iv)    Settlor's intention to assist or enable Jim to obtain capital to enter a business or profession.

(v)    Any federal, state or local income taxes imposed on Jim as a result of the income and/or gains from the trust

(b)    Distributions by Independent Trustee.    The Independent Trustee may, in its sole and absolute discretion, distribute to Jim so much of the income and principal of the trust as the Independent Trustee shall deem appropriate or advisable.    It is Settlor's intention to give the Independent Trustee the broadest discretion possible in determining the amount and timing of distributions of income and principal hereunder and Settlor recognizes that the Independent Trustee may, in the exercise of its discretion, determine

-2-

to distribute the entire trust estate to Jim or to make no distributions to Jim during Jim's disability or for so long as Jim shall have a judgment outstanding, or for so long as any distribution might be lost to Jim's creditors. It is also Settlor's intention and desire for the Independent Trustee to consider any federal, state or local income taxes imposed on Jim as a result of the income and/or gains from the trust in determining the amount of distributions to be made to Jim under this subsection (b).

(c)     <u>Inter Vivos Special Power of Appointment</u>. During Jim's lifetime, he shall have a special power to appoint any part or all of the trust estate to any individual or entity, except that no appointment shall be made to Jim, his creditors, his estate, or the creditors of his estate. Valid appointments may be in such amounts and proportions and upon such terms and conditions as Jim shall determine and evidence by written instrument delivered to the Trustee which specifically refers to this power of appointment and expresses the intention to exercise it; provided that such power of appointment shall not extend to any life insurance policies insuring Jim's life that constitute a part of the trust estate; and provided further that Jim shall not have a power to appoint by deed to or for the benefit of Jim or any individual or entity if such appointment has the effect of satisfying Jim's contractual or legal obligations. Any exercise of this power of appointment must be made in an executed and acknowledged written instrument delivered to the Trustee which to be effective must refer specifically to the power granted under this Section 3.1(c).

(d)     <u>Independent Trustee's Power to Grant Testamentary General Power of Appointment</u>. Except as otherwise provided herein, the Independent Trustee, by signed acknowledged instrument delivered to Jim, may grant Jim a testamentary general power of appointment (as defined in Sections 2041 of the Code) over part or all of the trust estate, provided, however, that such power of appointment shall only be effective in an amount up to but not in excess of the amount, if any, above which any further addition to the amount subject to the power of appointment would increase the Net Death Taxes (as hereinafter defined) by an amount equal to or greater than the decrease in the generation-skipping transfer tax that would result from such further addition. Unless Jim's will provides otherwise by express reference to this Trust Agreement and the above power of appointment, the increase in the Net Death Taxes resulting from such power shall be paid from that amount of the principal of the trust estate over which the power is exercisable. As used in this section, the term "Net Death Taxes" shall mean the aggregate death taxes (including, without limitation, Federal, state, local and other estate taxes and inheritance taxes but exclusive of interest and penalties), after taking into account all applicable credits, payable with respect to Jim's estate.

(i)     If Jim has one or more other general powers of appointment exercisable and measured substantially as provided in subsection (d) above, the amount that Jim may appoint under subsection (d) shall be reduced proportionally, based on the net fair market values of the principal of the trusts with respect to which such powers are exercisable as of the date of Jim's death, so that the aggregate of the amount so appointable under this Trust Agreement and the amount or amounts so appointable pursuant to such other power or powers

App. 67

together shall be no greater than the amount otherwise appointable under subsection (d) above.

(ii) The scope and terms of the power shall be defined in the instrument. Before such a power is exercised by Jim and the exercise becomes effective, the Independent Trustee may, in a similar manner, revoke or alter the power which was granted. This power shall not apply if the trust has an inclusion ratio of zero for generation-skipping transfer tax purposes. Jim shall not have a general power of appointment over any part of the trust estate unless such power is specifically granted to Jim by the Independent Trustee pursuant to this subsection.

(e) <u>Termination</u>. If not earlier terminated by distribution of the entire trust estate under the foregoing provisions, the trust shall terminate upon Jim's death. Upon termination of the trust, the Trustee shall distribute the balance of the trust estate as follows:

(i) <u>Pursuant to General Testamentary Power of Appointment</u>. This paragraph (i) shall apply if, but only if, the Independent Trustee grants Jim a general testamentary power of appointment pursuant to subsection (d) above and the Independent Trustee has not revoked the grant of that general power prior to the date of Jim's death. In that event, if Jim validly exercises such general testamentary power of appointment, the Trustee shall distribute so much of the trust estate then remaining as is validly appointed by Jim pursuant to such power in accordance with the terms of such appointment.

(ii) <u>Special Testamentary Power of Appointment</u>. This paragraph (ii) shall apply to so much of the trust estate then remaining as is not distributed pursuant to paragraph (i) above. The Trustee shall distribute the trust estate to such one or more individuals and entities, in such amounts and proportions and upon such terms and conditions, as Jim appoints by will or codicil which specifically refers to this power of appointment and expresses the intention to exercise it. However, Jim may not appoint to Jim, Jim's estate, Jim's creditors, or creditors of Jim's estate.

(iii) <u>Alternative Disposition</u>. The remaining and unappointed trust estate shall be held in trust or distributed as follows:

(1) If one or more of Jim's Descendants are then living, the Trustee shall divide the trust estate into separate equal shares, one for each then living Child and one for the then living Descendants, collectively, of each deceased Child with one or more Descendants then living. The Trustee shall administer a share for each Child in a separate trust for the primary benefit of the Child and for the Child's Descendants pursuant to Section 3.2 hereof. The Trustee shall administer a share for the Descendants of each deceased Child pursuant to Section 3.3 hereof.

-4-

(2)     If none of Jim's Descendants is then living, the trust estate shall be administered or distributed in accordance with Section 3.4 hereof.

3.2     <u>Trust for Child</u>.  All property directed to be administered in a separate trust for a Child under this Section 3.2 shall be administered and distributed for the Child's benefit upon the following terms:

(a)     <u>Distributions to Child</u>.  The Trustee may distribute to the Child so much of the net income and principal of the trust as the Trustee deems necessary to provide for the Child's reasonable maintenance, support, health and education.  In exercising its discretion, the Trustee shall take into account the following factors:

(i)     The Child's standard of living at the creation of the trust.

(ii)    The Child is the primary beneficiary of the trust.

(iii)   The Trustee shall take into consideration, in determining the Child's needs, any other income or resources known upon reasonable inquiry by it to be available to the Child for these purposes.

(iv)    Settlor's intention to enable or assist each Child to pursue vocational, college, graduate, and/or professional education as long as in the Trustee's judgment it is pursued to the Child's advantage and to receive an excellent earlier education.

(v)     Settlor's intention that the trust distributions not serve as a disincentive to the Child's motivation to provide for her own needs in life.

(b)     <u>Distributions to Child's Descendants</u>.  The Trustee may distribute to the Child's Descendants so much of the net income and principal of the trust as the Trustee, in its discretion, deems necessary to provide for their reasonable maintenance, support, health and education.  In exercising its discretion, the Trustee shall take into account the following factors:

(i)     The primary purpose of the trust.

(ii)    The respective needs of each Descendant.

(iii)   The Trustee shall take into consideration, in determining a Descendant's needs, any other income or resources known upon reasonable inquiry by it to be available to the Descendant for these purposes.

(iv)    Settlor's intention to enable or assist each Descendant to pursue vocational, college, graduate, and/or professional education as long as in the Trustee's judgment it is pursued to the Descendant's advantage and to receive an excellent earlier education.

App. 69

(v)    Settlor's intention that the trust distributions not serve as a disincentive to a Descendant's motivation to provide for his or her own needs in life, and Settlor's instruction to the Trustee to terminate or lessen distributions to a Descendant if that objective, in the judgment of the Trustee, would thereby be served.

Distributions hereunder need not be equal among the Descendants, and the Trustee may make distributions to one or more Descendants to the exclusion of others. Distributions shall be charged against the trust estate as a whole, and not against the distributive share of any Descendant upon termination of the trust.

(c)    <u>Inter Vivos Special Power of Appointment</u>. The Child, acting in the Child's individual capacity, shall have a special power to appoint the income and principal of the trust to or for the benefit of one or more members of the limited class consisting of the Descendants of the Children, in such amounts and proportions and upon such terms and conditions, as the Child shall direct; provided that the Child shall not have a power to appoint by deed to or for the benefit of any individual if such appointment has the effect of satisfying a contractual obligation or legal support obligation of the Child. This power of appointment may be exercised subject to such terms and conditions as the Child shall direct, including an appointment in further trust, but no trust created by the exercise of such power may extend beyond the maximum term allowable with respect to any trust created under this Trust Agreement. Any exercise of this power of appointment must be made in an executed and acknowledged written instrument delivered to the Trustee which to be effective must refer specifically to the power granted under this Section 3.2(c).

(d)    <u>Termination</u>. If not earlier terminated by distribution of the entire trust estate under the foregoing provisions, the trust shall terminate upon the death of the Child. Upon termination, the Trustee shall distribute the trust estate then remaining, or any part thereof, to such one or more members of the limited class consisting of Jim's Descendants, in such amounts and proportions and upon such terms and conditions, as the Child shall appoint by will or codicil which specifically refers to this power of appointment and expresses the intention to exercise it. However, the Child may not appoint to the Child, the Child's creditors, estate, or creditors of the Child's estate. The trust property not appointed by the Child in accordance with this special power of appointment shall be administered by the Trustees for the Child's then living Descendants pursuant to Section 3.3 hereof. If there are no Descendants of the Child then living, the Trustee shall distribute the remaining trust estate to Jim's then living Descendants, <u>Per Stirpes</u>. If any property is distributable to a person for whose benefit a trust which was established under this Trust Agreement is then being administered, the property shall be added to that trust and administered according to its terms. If no Descendant of Jim is then living, the Trustee shall administer or distribute the remaining trust estate pursuant to Section 3.4 hereof.

3.3    <u>Trusts for Descendants</u>. The Trustee shall divide property which is to be administered under this Section 3.3 for the Descendants of a deceased Child, among such

-6-

Descendants, Per Stirpes. The Trustee shall administer each share created for a Descendant of a deceased Child (the "Beneficiary") in a separate trust for the Beneficiary's benefit upon the following terms:

(a)   Distributions.  The Trustee shall distribute to the Beneficiary so much of the net income and principal of the trust as the Trustee deems necessary for the Beneficiary's reasonable maintenance, support, health and education.  In exercising its discretion, the Trustee shall take into account the following factors:

(i)   The Beneficiary's standard of living at the creation of the trust.

(ii)   The Beneficiary is the primary beneficiary of the trust.

(iii)   The Trustee shall take into consideration, in determining the Beneficiary's needs, any other income or resources known upon reasonable inquiry by it to be available to the Beneficiary for these purposes.

(iv)   Settlor's intention to enable or assist each Beneficiary to pursue vocational, college, graduate, and/or professional education as long as in the Trustee's judgment it is pursued to the Beneficiary's advantage and to receive an excellent earlier education.

(v)   Settlor's intention that the trust distributions not serve as a disincentive to the Beneficiary's motivation to provide for his or her own needs in life.

(b)   Distributions to Beneficiary's Descendants.  The Trustee may distribute to the Beneficiary's Descendants so much of the net income and principal of the trust as the Trustee, in its discretion, deems necessary to provide for their reasonable maintenance, support, health and education.  In exercising its discretion, the Trustee shall take into account the following factors:

(i)   The primary purpose of the trust.

(ii)   The respective needs of each Descendant.

(iii)   The Trustee shall take into consideration, in determining a Descendant's needs, any other income or resources known upon reasonable inquiry by it to be available to the Descendant for these purposes.

(iv)   Settlor's intention to enable or assist each Descendant to pursue vocational, college, graduate, and/or professional education as long as in the Trustee's judgment it is pursued to the Descendant's advantage and to receive an excellent earlier education.

(v)   Settlor's intention that the trust distributions not serve as a disincentive to a Descendant's motivation to provide for his or her own needs in

App. 71

life, and Settlor's instruction to the Trustee to terminate or lessen distributions to a Descendant if that objective, in the judgment of the Trustee, would thereby be served.

Distributions hereunder need not be equal among the Descendants, and the Trustee may make distributions to one or more Descendants to the exclusion of others. Distributions shall be charged against the trust estate as a whole, and not against the distributive share of any Descendant upon termination of the trust.

(c)     <u>Inter Vivos Special Power of Appointment</u>. The Beneficiary, acting in the Beneficiary's individual capacity, shall have a special power to appoint the income and principal of the trust to or for the benefit of one or more members of the limited class consisting of Jim's Descendants in such amounts and proportions and upon such terms and conditions, as the Beneficiary shall direct; provided that the Beneficiary shall not have a power to appoint by deed to or for the benefit of any individual if such appointment has the effect of satisfying a contractual obligation or legal support obligation of the Beneficiary. Furthermore, the Beneficiary may not appoint to the Beneficiary, the Beneficiary's creditors, estate or creditors of the Beneficiary's estate. This power of appointment may be exercised subject to such terms and conditions as the Beneficiary shall direct, including an appointment in further trust, but no trust created by the exercise of such power may extend beyond the maximum term allowable with respect to any trust created under this Trust Agreement. Any exercise of this power of appointment must be made in an executed and acknowledged written instrument delivered to the Trustee which to be effective must refer specifically to the power granted under this Section 3.3(c).

(d)     <u>Termination</u>. If not earlier terminated by distribution of the entire trust estate under the foregoing provisions, the trust shall terminate at the death of the Beneficiary. Upon termination, and except as otherwise provided pursuant to Section 3.5 hereof, the Trustee shall distribute the trust estate then remaining, or any part thereof to such one or more members of the limited class consisting of Jim's Descendants, in such amounts and proportions and upon such terms and conditions, as the Beneficiary shall appoint by will or codicil which specifically refers to this power of appointment and expresses the intention to exercise it. However, the Beneficiary may not appoint to the Beneficiary, the Beneficiary's creditors, estate or creditors of the Beneficiary's estate. The trust property not effectively appointed by the Beneficiary in accordance with this special power of appointment or pursuant to Section 3.5 hereof shall be distributed, <u>Per Stirpes</u>, to: the Beneficiary's Descendants living at the termination of the trust; or if there are no such Descendants then living, to the then living Descendants of the Child who was the parent of the Beneficiary; or if there are no such Descendants then living, to Jim's then living Descendants. If any property is distributable under this subsection to a Child, such property shall be added to the Child's Trust and administered pursuant to the terms of Section 3.2. If any property is distributable under this subsection to a Descendant of Jim (other than a Child), such property shall be administered in trust for such Descendant's benefit pursuant to the terms of this Section 3.3. If no Descendant of Jim is then living,

-8-

the Trustee shall administer or distribute the remaining trust estate pursuant to Section 3.4 hereof.

3.4 <u>Contingent Distribution</u>. If Jim and Jim's Descendants are all are deceased and no other disposition of the trust estate is called for in this Trust Agreement, the trust estate then remaining shall be distributed to those persons other than creditors and Settlor who, under the laws of Texas in force at that time, would have taken the personal property of Jim had he died intestate, a single person without Descendants, domiciled in the State of Texas, the moment after the event causing the distribution hereunder, the shares and proportions of taking to be determined by Texas laws.

3.5 <u>General Power of Appointment for Certain Beneficiaries</u>.

(a) Except as provided in subsection (c) below, any provision of this Trust Agreement to the contrary notwithstanding, at the death of any individual ("such beneficiary") at whose death the generation-skipping transfer tax would, but for the provisions of this section, be applicable with respect to any trust created under this Trust Agreement, the Trustees shall pay out of the principal of such trust such amount as such beneficiary, by express provision referring to this Trust Agreement and this power of appointment in his or her will, appoints, to or among such beneficiary's creditors, up to but not in excess of the amount, if any, above which any further addition to the amount subject to the power of appointment would increase the Net Death Taxes (as hereinafter defined) by an amount equal to or greater than the decrease in the generation-skipping transfer tax that would result from such further addition. Unless such beneficiary's will otherwise provides by express reference to this Trust Agreement and the above power of appointment, the increase in the Net Death Taxes resulting from such power shall be paid from that amount of the principal of such trust over which such power is exercisable. The foregoing provisions of this section shall be effective only if the Trustees shall make a determination that the generation-skipping transfer tax would not be applicable with respect to the amount of such trust over which such power is exercisable. As used in this section, the term "Net Death Taxes" shall mean "the aggregate death taxes (including, without limitation, federal, state, local and other estate taxes and inheritance taxes but exclusive of interest and penalties), after taking into account all applicable credits, payable with respect to the estate of such beneficiary."

(b) If under the will of any individual or individuals and/or any other trust instrument or instruments, such beneficiary has one or more other general powers of appointment exercisable and measured substantially as provided in subsection (a) above, the amount such beneficiary may appoint under subsection (a) shall be reduced proportionally, based on the net fair market values of the principal of the trusts with respect to which such powers are exercisable as of the date of death of such beneficiary, so that the aggregate of the amount so appointable under this Trust Agreement and the amount or amounts so appointable pursuant to such other power or powers together shall be no greater than the amount otherwise appointable under subsection (a) above.

-9-

**App. 73**

(c)     The provisions of this section shall not apply to the trust administered for Jim under Section 3.1.

3.6     <u>Postponement of Distribution</u>.     Upon termination of any trust established hereunder, if any property is distributable to a beneficiary who is then under age twenty-five (25), or who, because of age, physical or mental weakness, or for any other reason is, in the sole discretion of the Trustee, unable to manage the property, the Trustee shall retain such property in a separate trust for the benefit of that beneficiary, until he or she attains age twenty-five (25) and in the sole discretion of the Trustee becomes able to manage the property.  At that time, the remaining trust property shall be distributed to the beneficiary and the separate trust shall terminate.  During the term of the trust, the Trustee shall distribute to the beneficiary so much of the net income and principal as the Trustee deems necessary to provide for the beneficiary's health, support, maintenance and education.  If the beneficiary dies before the termination of the trust, the then remaining trust estate shall be distributed to the beneficiary's estate.


ARTICLE IV

PROVISIONS AFFECTING DISTRIBUTION

4.1     <u>Withdrawal Right</u>.  Jim shall have the right, following a contribution to Jim's trust, to make a withdrawal in accordance with the provisions of this section unless the transferor indicates otherwise when making the transfer.  A separate withdrawal right shall attach to each separate contribution of properties to Jim's trust.   If a transferor is married at the time of contribution to the Trustee, then solely for purposes of the withdrawal rights granted in this Section 4.1, unless the transferor notifies the Trustee in writing to the contrary, such contribution shall be treated as two separate contributions having been made one-half (1/2) by the transferor and one-half (1/2) by the transferor's spouse, regardless of whether the property contributed is community property and regardless of whether they elect to treat such contribution as having been made one-half by each of them for Federal gift tax purposes.   Any person making a contribution to Jim's trust may give the Trustee written instructions that no withdrawal right is to be granted, or that alternative withdrawal rights are to be granted with respect to the contribution being made.

(a)     <u>Amount That May Be Withdrawn</u>.  When a contribution is made, Jim may withdraw the lesser of the following amounts:

(i)     the maximum present interest exclusion amount permitted, under Section 2503(b) of the Code, or any similar succeeding statute (such amount being $12,000 at the date of execution of this Trust Agreement), less the cumulative value of all previous known gifts to or for the benefit of Jim by the same transferor during the same calendar year which would qualify for the present interest exclusion; or

(ii)     the remainder determined by subtracting Jim's cumulative rights of withdrawal with respect to any other gifts from any transferor that are either

App. 74

currently outstanding or that have previously lapsed (but not including the present right of withdrawal) during the same calendar year from the greater of (1) Five Thousand Dollars ($5,000), or (2) Five Percent (5%) of the total value of Jim's trust determined as of the date the current withdrawal power is to lapse (such value may be estimated by the Trustee), or (3) any greater withdrawal power, the lapse of which would not constitute a release of such power under Sections 2041(b)(2) and 2514(e) of the Code or any similar subsequent statute; or

        (iii)     the value of the contribution that is subject to the withdrawal right.

        (b)    <u>Withdrawal Period and Notice</u>.  Unless directed to the contrary by the transferor, the Trustee shall promptly provide Jim with written notice of the date of the contribution, the name of the transferor, the value of the properties contributed, and the value of Jim's withdrawal right.  Withdrawals may be made at any time for a period of thirty (30) days following Jim's receipt of the notice of the existence of the withdrawal right.  During any period that Jim lacks legal capacity, Jim's guardian or other legal representative, other than Settlor, may exercise Jim's withdrawal right on Jim's behalf.  If Jim does not exercise the withdrawal right before the expiration of that period, the unexercised right shall lapse.  For purposes of this section, the term "contribution" means any cash or other property which is transferred to the Trustee as part of the trust estate.  The value of any contribution to the trust estate shall be its value for federal gift tax purposes.

        (c)    <u>Payment of Withdrawal Amount</u>.  If Jim exercises his withdrawal right, payment of the amount due shall be made in cash immediately upon receipt by the Trustee of a demand in writing from Jim or his guardian or other legal representative, other than Settlor.  Upon the exercise of a withdrawal right, payment shall be made, first, from any gifts made to Jim's trust prior to the exercise of such withdrawal right, but during the same calendar year in which the withdrawal right is exercised, and shall be charged against the trust.  Should such gift or gifts not consist of sufficient cash to satisfy the exercised withdrawal right, the Trustee shall use other liquid assets of Jim's trust for such purpose.  Should Jim's trust not contain sufficient liquid assets to satisfy an exercised withdrawal right when made, the Trustee shall borrow funds in order to satisfy the demand and shall, if necessary, pledge trust property to secure the loan.

        (d)    <u>Distributions During Withdrawal Period</u>.  If any contribution is made subject to a withdrawal right, the Trustee shall not make any distributions under any other provision of the Trust Agreement which would prevent the Trustee from being able to satisfy fully any unexpired right of withdrawal.

        (e)    <u>Lapse of Withdrawal Right</u>.  In the event Jim allows a withdrawal right granted under this Section 4.1 to lapse with respect to a contribution, or any portion thereof, the Trustee is authorized to characterize such lapse as a "release" for purposes of Section 678(a) of the Code.

App. 75

    4.2   <u>Restriction Upon Alienation</u>. No beneficiary may anticipate, by assignment or otherwise, his beneficial interest in the principal or income of the trust estate; nor may any beneficiary sell, transfer, encumber, or in any way charge his interest in trust income or principal prior to actually receiving it. Neither the income nor the principal of any trust established hereunder shall be subject to any execution, garnishment, attachment, bankruptcy, claims for alimony or support, other legal proceeding of any character, legal sequestration, levy or sale, or in any other event or manner be applicable or subject, voluntarily or involuntarily, to the payment of a beneficiary's debts. The Trustee shall make distributions to or for each beneficiary according to the terms hereof, notwithstanding any purported sale, assignment, hypothecation, transfer, attachment, or judicial process. The provisions of this section shall not limit or detract from any power of appointment or withdrawal right granted to any beneficiary herein.

    4.3   <u>Distributions Constitute Separate Property</u>. Settlor intends to make a gift to each beneficiary hereunder of only that portion of the income and principal of each trust that is in fact distributed to such beneficiary. Inasmuch as the amounts actually distributed to a beneficiary hereunder constitute the gift Settlor contemplated making, such distributions, whether they be income or principal, shall constitute the separate property of such beneficiary and not the community property of such beneficiary. Furthermore, it is Settlor's intention that no beneficiary shall have any interest in any undistributed income or principal until the distribution of such income or principal and, accordingly, such undistributed income and principal shall not be deemed the community property of any such beneficiary and that beneficiary's spouse.

    4.4   <u>Method of Payment</u>. The Trustee, in its discretion, may make distributions to any beneficiary, including a beneficiary who is under a physical, mental, or legal disability (minority or other), in any one or more of the following ways: directly to the beneficiary without the intervention of any legal guardian or other legal representative; as expenditures in the beneficiary's behalf; to the guardian, committee, conservator, or other similar official acting for the beneficiary; to a custodian for the beneficiary under a Uniform Transfers to Minors Act or Uniform Gifts to Minors Act; to a relative of the beneficiary or to any suitable person with whom the beneficiary resides or who has care or custody of the beneficiary; and in all ways provided by law for gifts or other transfers to or for minors or other persons under disability. In each case, receipt by the beneficiary or other person to whom payment is made or a distribution entrusted shall be a complete discharge of the Trustee with respect thereto. The Trustee may act upon such evidence as it deems appropriate and reliable in determining a beneficiary's ability to manage property and identifying a proper recipient of trust funds hereunder.

    4.5   <u>Evidence of Need</u>. In exercising its discretion under this Trust Agreement, the Trustee shall be entitled to rely upon the written certification of a beneficiary or of another as to the nature and extent of a beneficiary's needs, and the adequacy of the beneficiary's resources apart from the trust to meet those needs. The Trustee may, but shall not be required to, make inquiry into the accuracy of the information it receives

    4.6   <u>Termination of Small Trust</u>. Notwithstanding any provision of this Trust Agreement to the contrary, the Trustee may at any time terminate any trust when in its judgment the trust is so small that it would be inadvisable or uneconomical to continue the trust administration. In the event of termination, the Trustee shall distribute the trust to the income

App. 76

beneficiaries of the trust determined at the time of distribution in the proportions to which they are entitled to receive income. If at that time rights to income are not fixed by the terms of the trust, distribution shall be made to the persons to whom the Trustee may then distribute income, in proportions determined in the Trustee's discretion, exercised consistently with the trust's purposes. Distribution of trust funds in the manner herein provided shall relieve the Trustee of any further responsibility with respect to such funds. This section shall not apply to a Trustee with respect to any trust of which such Trustee is a beneficiary, or if Trustee has duty to support the beneficiary or to any Trustee who may be removed and replaced by a beneficiary of the trust unless the successor trustee must be a corporate fiduciary or someone who is not related or subordinate to the beneficiary within the meaning of Section 672(c) of the Code. The provisions of this section shall not limit or detract from any withdrawal right granted to any beneficiary herein.

4.7 <u>Generation-Skipping Transfer Taxes and Payment</u>. It is Settlor's intent that the trusts created hereunder be exempt from Generation-Skipping Transfer Taxes. If, however, the Trustee considers any distribution or termination of an interest or power in a trust to be a taxable distribution (a "Distribution") or a taxable termination (a "Termination"), or a direct skip (a "Direct Skip") for generation-skipping transfer tax purposes, the Trustee may exercise the following authorities with respect to any such Distribution, Termination or Direct Skip. In the case of a Distribution, the Trustee may increase the amount to be distributed by an amount estimated to be sufficient to permit the beneficiary receiving such Distribution to pay the estimated generation-skipping tax attributable to such Distribution. Generally, the Trustee would not be expected to augment any partial terminating distribution in order to pay generation-skipping transfer taxes attributable to such partial terminating distribution from a trust. In the case of a Termination or Direct Skip, the Trustee shall pay the generation-skipping transfer tax attributable to such Termination or Direct Skip, and may postpone final termination of any trust or the complete funding of any Direct Skip, and may withhold all or any portion of the trust property, until the Trustee is satisfied it no longer has any liability to pay any generation-skipping transfer tax with reference to the Termination or Direct Skip. If a generation-skipping transfer tax is imposed in part by reason of property held in trust under a Settlor's will or codicil, and in part by reason of other property, the Trustee shall pay only the portion of such tax that is fairly attributable to the Distribution, Termination, or Direct Skip hereunder, taking into consideration deductions, exemptions, credits and other factors which the Trustee deems appropriate. The Trustee may, but need not make any equitable adjustments among beneficiaries of a trust as a consequence of additional distributions or generation-skipping transfer tax payments made with respect to Distributions or Terminations or Direct Skips.

ARTICLE V

THE TRUSTEE

5.1 <u>Resignation of Trustee</u>. The Trustee may resign as to any one or more of the trusts created hereunder by giving written notice to Settlor, if living; otherwise to the current income beneficiary of the trust.

-13-

5.2    Appointment and Succession of Trustees.

    (a)    Generally.

       (i)    Family Trustee.  Jim is the initial Family Trustee of all trusts created hereunder. If Jim ceases to act as Family Trustee, or if any successor Family Trustee fails or ceases to act, Jim may appoint a successor Family Trustee within thirty (30) days of a vacancy arising. If Jim is deceased or if Jim otherwise fails to appoint a successor, GRANT JAMES SCOTT, III is appointed as successor Family Trustee. If GRANT JAMES SCOTT, III fails or ceases to act as Family Trustee, or if any other Family Trustee fails or ceases to act, and a successor is not appointed by Jim as provided above, JOHN WILLIAM HONIS is appointed as successor Family Trustee. If JOHN WILLIAM HONIS fails or ceases to act as Family Trustee, and a successor is not appointed by Jim as provided above, the Family Trustee last serving shall appoint a successor Family Trustee. If a successor Family Trustee is not appointed within sixty (60) days of a vacancy arising, the successor Family Trustee shall be appointed pursuant to the provisions of subsection (b) hereof.

       (ii)    Independent Trustee. GRANT JAMES SCOTT, III is appointed as the initial Independent Trustee and shall begin serving as such upon delivery of a written acknowledged instrument to the Family Trustee wherein GRANT JAMES SCOTT, III accepts the trust and the position of Independent Trustee. If GRANT JAMES SCOTT, III, fails or ceases to act, or if any other Independent Trustee fails or ceases to act, Jim may appoint a successor within thirty days (30) of the vacancy arising; provided that Jim shall not serve as Independent Trustee and a successor Independent Trustee appointed by Jim may not be related or subordinate to Jim within the meaning of Section 672(c) of the Code. If a successor is not so appointed, JOHN WILLIAM HONIS is appointed Independent Trustee. If JOHN WILLIAM HONIS fails or ceases to act as Independent Trustee, and a successor is not appointed by Jim as provided above, the Independent Trustee last serving may appoint the successor Independent Trustee. If a successor Independent Trustee is not so appointed within sixty (60) days of a vacancy arising, a successor Independent Trustee shall be appointed pursuant to the provisions of subsection (b) hereof.

       (iii)    Administrative Trustee.    COMMONWEALTH TRUST COMPANY is the initial Administrative Trustee. If COMMONWEALTH TRUST COMPANY fails or ceases to serve, Jim may appoint a successor Administrative Trustee within thirty days (30) of the vacancy arising. If a successor is not so appointed, the Family Trustee may appoint a successor Administrative Trustee within sixty (60) days of the vacancy arising. If a successor is not so appointed, a successor shall be appointed in the same manner as provided for the Family Trustee under subsection (a) above. The selection of the Administrative Trustee can have a substantial impact on the situs of the trust, which should be considered in appointing a successor Administrative Trustee.

Notwithstanding any other provision in the Trust Agreement to the contrary, no Administrative Trustee may be appointed under this paragraph if the appointment of such Administrative Trustee would change the situs of the trust to a jurisdiction that has a rule against perpetuities or similar rule which limits the period during which property can be held in trust

The Administrative Trustee shall act in a fiduciary capacity but shall not be a Trustee or co-Trustee except to the extent and for the limited purposes described in Section 6.2. Accordingly, no reference in this Trust Agreement to the "Trustee" or "co-Trustee" shall include, or be deemed to refer to, the Administrative Trustee. Notwithstanding the foregoing, the same individual or bank or trust company may serve simultaneously as both a Trustee or co-Trustee and as Administrative Trustee for any trust created hereunder. The initial Administrative Trustee and each successor may resign at any time and may be removed at any time by the Family Trustee.

For services rendered as Administrative Trustee under this Agreement, any Administrative Trustee shall be entitled to reasonable compensation for his, her or its services, as well as be entitled to reimbursement for all expenses reasonably incurred in performing his, her or its duties hereunder. Any Administrative Trustee may receive (or retain) payment in accordance with its schedule or rates as published from time to time and as in effect at the time such compensation becomes payable, unless otherwise agreed in writing with the Family Trustee.

No termination fee shall be charged upon removal or resignation of an Administrative Trustee. However, such Administrative Trustee shall be entitled to reasonable compensation for time and materials for additional services over and above Administrative Trustee's normal duties in transferring trust assets and administration of the trust to the new Administrative Trustee.

(b)     Successor Trustee. If a named or appointed successor Trustee fails or ceases to serve and no other successor is named or appointed pursuant to subsection (a) hereof, a majority in number of the beneficiaries to whom the Trustee is to or may distribute income at that time may appoint the successor Trustee, and each shall have a reasonable time in which to act. If a successor Trustee is not so appointed, any beneficiary of a trust may secure the appointment of a successor Trustee by a court of competent jurisdiction at the expense of the trust estate.

(c)     Manner of Appointment; Permissible Trustees. Appointment, other than by a court, shall be by a signed, acknowledged instrument delivered to the appointed Trustee. An appointment may be made before a vacancy arises, to become effective in the event of the vacancy with the last such instrument to control. The successor Trustee appointed by Jim or a Trustee may be one or more persons and/or entities; provided that neither Settlor nor Jim shall serve as Independent Trustee and a successor Independent Trustee appointed by Jim may not be related or subordinate to Jim within the meaning of

App. 79

Section 672(c) of the Code. Any other successor Trustee shall be a trust company or a bank in the United States having trust powers with not less than Fifty Million Dollars unimpaired capital and surplus. A successor Trustee shall have a reasonable time after a vacancy occurs in which to accept the office by signed, acknowledged instrument delivered to those making the appointment, if living, or to the then current beneficiaries to whom the Trustees are to or may make distributions.

5.3     Removal of Trustee. Jim shall have the power to remove the Trustee of any trust created hereunder, without cause. If Jim is deceased or if Jim is incapacitated within the meaning of Section 5.11 hereof, the primary beneficiary (or, if more than one, a majority of the primary beneficiaries) of a trust may remove any Trustee without cause. Removal shall be effected by delivering to the Trustee a signed acknowledged instrument which is effective thirty (30) days from its receipt (unless a shorter period is agreed to by the Trustee).

5.4     Succession of Corporate Trustee. If any corporate Trustee before or after qualification changes its name, becomes consolidated or merged with another corporation, or otherwise reorganizes, any resulting corporation which succeeds to the fiduciary business of such corporate Trustee shall become a Trustee hereunder in lieu of such corporate Trustee.

5.5     Trustee's Fees. Jim and Jim's Descendants shall not receive a fee for serving as Trustee. Any other Trustee shall be entitled to reasonable fees commensurate with its duties and responsibilities, taking into account the value and nature of the trust estate and the time and work involved. The Trustee shall be reimbursed for reasonable costs and expenses incurred in connection with its fiduciary duties hereunder.

5.6     Bond. The Trustee shall not be required to furnish bond or other security.

5.7     Liability of Trustee.

(a)     Generally. A Trustee other than a corporate trustee shall only be liable for willful misconduct or gross negligence, and shall not be liable for breach of fiduciary duty by virtue of mistake or error in judgment.

(b)     Administrative Trustee. Every act done, power exercised or obligation assumed by the Administrative Trustee pursuant to the provisions of this Agreement shall be held to be done, exercised or assumed, as the case may be, by the Administrative Trustee acting in a fiduciary capacity and not otherwise, and every person, firm, corporation or other entity contracting or otherwise dealing with the Administrative Trustee shall look only to the funds and property of the trust fund for payment under such contract or payment of any money that may become due or payable under any obligation arising under this Agreement, in whole or in part, and the Administrative Trustee shall not be individually liable therefor even though the Administrative Trustee did not exempt himself, herself or itself from individual liability when entering into any contract, obligation or transaction in connection with or growing out of the trust fund.

The decision of the Administrative Trustee hereunder with respect to the exercise or nonexercise by such Administrative Trustee of any power hereunder, or the time or

-16-

**App. 80**

manner of the exercise thereof, made in good faith, shall fully protect such Administrative Trustee and shall be final, conclusive and binding upon all persons interested in the Trust or the income therefrom. To the extent permitted under applicable law, the Administrative Trustee acting hereunder shall not be responsible for any error of judgment or mistake of fact or law, absent bad faith or willful misconduct.

The Administrative Trustee shall be liable hereunder only for the Administrative Trustee's bad faith or willful misconduct proved by clear and convincing evidence in the court then having primary jurisdiction over the trust. The Administrative Trustee shall not be personally liable for making any delegation that is authorized under this Agreement, nor for any action taken without the Administrative Trustee's express agreement, nor for any failure to act absent willful misconduct. The Administrative Trustee shall not be liable for relying absolutely on (i) any apparently valid documents and certifications including, but not limited to, tax reports and other tax information provided to the Administrative Trustee by any entity in which the trust fund holds an ownership interest; and (ii) the opinions of counsel or any accountant to any trust.

Prior to the death of Settlor, the Administrative Trustee shall be under no duty to inform any person having a beneficial interest in any trust created hereunder of the existence of any such trust or the nature and extent of that person's beneficial interest in, or rights with respect to, any such trust. Following the death of Settlor, the Administrative Trustee shall be under no duty to inform any person, other than the primary beneficiary of each trust hereunder, having a beneficial interest in any trust created hereunder of the existence of such trust or the nature and extent of that person's beneficial interest in, or rights with respect to, any such trust.

While not required, the same procedure used to settle the Administrative Trustee's accounts may also be employed to obtain the conclusive consent by the beneficiaries to the Administrative Trustee's specific conduct of any other particular matter. The Administrative Trustee and each former Administrative Trustee shall be indemnified and held harmless by each trust created hereunder against any threatened, pending or completed action, claim, demand, suit or proceeding, whether civil, criminal, administrative or investigative, falling within the exculpatory provisions of this Section or to which the Administrative Trustee is made a party, or threatened to be made a party, by reason of serving as Administrative Trustee if the Administrative Trustee acted in good faith, subject to the limitations set forth above. Such indemnification shall include expenses, including attorneys' fees, judgments, fines and amounts paid in settlement actually incurred by the Administrative Trustee in connection with such action, claim, demand, suit or proceeding. The cost of indemnification shall be apportioned against the various trusts created hereunder as the Administrative Trustee reasonably considers appropriate, taking into account the nature of the claims involved.

The Administrative Trustee shall not have any fiduciary responsibility to observe, monitor or evaluate the actions of any Trustee or other fiduciary and shall not be liable to any party for the failure to seek to attempt to prevent a breach of trust, or failure to remedy a breach of trust, or in a recurring situation to request instructions from a court

-17-

App. 81

having jurisdiction over the trust. In no event shall any Administrative Trustee hereunder be liable for any matter with respect to which he, she or it is not authorized to participate hereunder (including the duty to review or monitor trust investments).

Any Successor Administrative Trustee shall be deemed vested with all the duties, rights, titles and powers, whether discretionary or otherwise, as if originally named as Administrative Trustee. No Successor Administrative Trustee shall be personally liable for any act or failure to act of any predecessor Administrative Trustee or any other Trustee. The Successor Administrative Trustee may accept the account rendered and the property delivered by the predecessor Administrative Trustee as a full and complete discharge to the predecessor Administrative Trustee, without incurring any liability for so doing.

5.8    Predecessor Fiduciary. No successor Trustee shall be obligated or required to inquire into the acts, omissions, or accounts of any prior trustee or to bring any action against any prior trustee to compel redress of any breach of trust or for any other reason. In no event shall a successor Trustee be liable for any act or omission of any prior Trustee. A successor Trustee may accept the account rendered and the property received from a prior Trustee as a full and complete discharge to the prior Trustee without incurring any liability for doing so. A successor Trustee shall have all of the powers and discretions conferred in the governing instrument upon the original trustee.

5.9    Periodic Accounting. The Trustee may from time to time render an informal account, statement or report of its administration of each separate trust hereunder to each beneficiary who during the period covered by the account was entitled absolutely to a current payment of income or principal from the trust, or, if there is no such beneficiary, to such beneficiaries who are entitled absolutely or in the discretion of the Trustee to a payment of income or principal from the trust. If any beneficiary or legal representative or parent of a beneficiary who is not of full age or legal capacity to whom any such account is rendered shall not, within ninety (90) days after the mailing of such statement, have notified the Trustee in writing of its disapproval of the same, such statement shall be deemed to be approved

No Administrative Trustee shall be required to file or render periodic accounts in or to any court other than for good cause shown. No Administrative Trustee shall be required to give any bond.

Within 90 days following the close of each calendar year, if information is available, and if not within 30 days after it is delivered to the Administrative Trustee, and within 90 days after the removal or resignation of the Administrative Trustee, the Administrative Trustee may deliver an accounting to each primary beneficiary. The accounting shall be a written accounting of the trusts hereunder during such year or during the period from the close of the last preceding year to the date of such removal or resignation and shall set forth all investments, receipts, distributions, expenses and other transactions of each such trust and show all cash, securities, and other property held as a part of each such trust at the end of such year or as of the date of such removal or resignation, as the case may be. The accountings referred to in this Section shall be deemed to be an account stated, accepted and approved by all of the beneficiaries of each trust for which an

-18-

accounting is rendered, and the Administrative Trustee shall be relieved and discharged, as if such accounting had been settled and allowed by a final judgment or decree of a court of competent jurisdiction, unless protested by written notice to the Administrative Trustee, within 60 days of mailing thereof, by the person designated to receive such accounting. The Administrative Trustee shall have the right, at the expense of the trust, to apply at any time to a court of competent jurisdiction for judicial settlement of any account of the Administrative Trustee whether or not previously settled as herein provided or for the determination of any question of construction or for instructions. In any such action or proceeding it shall be necessary to join as parties solely the Administrative Trustee and the Settlor (although the Administrative Trustee may also join such other parties as it may deem appropriate), and any judgment or decree entered therein shall be conclusive and binding on all persons at any time interested in the trust.

5.10    Beneficiary under Disability. A parent, custodian, or guardian of any beneficiary who is under the disability of minority or, in the Trustee's opinion, any other legal, physical, or mental disability, may, in carrying out the provisions of this Trust Agreement, act and receive notice in the beneficiary's stead, and sign any instrument for the beneficiary.

5.11    Incapacity of Individual Trustee. In the event a Trustee other than a corporate Trustee becomes unable to discharge his duties as Trustee hereunder by reason of accident, physical or mental illness or deterioration, or other cause, and does not resign, then upon certification by two medical doctors affirming that each has examined the Trustee and that each has concluded, based on such examination, that he is unable to discharge his duties hereunder, the Trustee shall cease to serve, as if he had resigned, effective the date of the certification.

ARTICLE VI

TRUST ADMINISTRATION

6.1    General Powers. Subject to any limitation stated elsewhere in this Trust Agreement, and the division of powers contained in Section 6.2, the Trustee shall have, in addition to all powers granted to trustees by the common law and by Delaware statutes, as amended from time to time, the following powers with respect to each trust established hereunder:

(a)    Retain Property. To retain any property received from any source, including any corporate Trustee's securities, regardless of lack of diversification, risk, or nonproductivity.

(b)    Invest. To invest the trust estate in any kind of property, including common trust funds administered by a corporate Trustee or by others, without being limited by any statute or any rule of law dealing with the character, risk, productivity, diversification of, or otherwise concerning, investments by trustees.

(c)    Sell. By public offering or private negotiation, to sell, exchange, assign, transfer, or otherwise dispose of all or any real or personal trust property and give options

-19-

for these purposes, for such price and on such terms, with such covenants of warranty and such security for deferred payment as the Trustee deems proper. To partition between the trust and any other owner, as the Trustee deems proper, any property in which the trust owns an undivided interest.

(d)    Lease.  To lease trust property for terms within or extending beyond the term of the trust, for any purpose.

(e)    Real Estate.  To operate, maintain, repair, rehabilitate, alter, erect, improve, or remove any improvements on real estate; to subdivide real estate; to grant easements, give consents, and enter into contracts relating to real estate or its use; and to release or dedicate any interest in real estate.

(f)    Borrow.  To borrow money for any purpose either from the banking department of any corporate Trustee or from others; to encumber or hypothecate trust property by mortgage, deed of trust, or otherwise; and to maintain, renew, or extend any indebtedness upon such terms as the Trustee deems appropriate.

(g)    Loans.  To lend money to any person or entity, including, but not limited to, a beneficiary hereunder, but not including a Settlor or a Trustee (other than a beneficiary serving as Trustee) hereunder, or a spouse of theirs, upon such terms and with such security as the Trustee deems advisable.

(h)    Conserve Estate.  To take any action to conserve the trust estate.

(i)    Litigation.  To commence or defend at the expense of the trust such litigation with respect to the trust estate as the Trustee deems advisable.

(j)    Claims.  To collect, pay, contest, compromise, settle, renew, or abandon any claims or demands of or against the trust estate without court authority on whatever terms the Trustee deems advisable.

(k)    Abandon Property.  To abandon any property or interest in property belonging to the trust when, in the Trustee's discretion, such abandonment is in the best interest of the trust and its beneficiaries.

(l)    Documents.  To execute contracts, notes, conveyances, and other instruments containing covenants, representations, or warranties binding upon and creating a charge against the trust estate or containing provisions excluding personal liability, or any other written instrument of any character appropriate to any of the powers or duties conferred upon the Trustee.

(m)    Agents.  To employ attorneys, auditors, investment advisors, depositaries, and agents with or without discretionary powers, to employ a bank with trust powers as agent for the purpose of performing any ministerial duties incident to the administration, and to pay all expenses and fees so incurred.

(n)  <u>Securities</u>.  To engage in all actions necessary to the effective administration of securities including, but not limited to, the authority to: vote securities in person or by proxy; engage in a voting trust or voting agreement; and consent to or participate in mergers, consolidations, sales of assets, recapitalizations, reorganizations, dissolutions, or other alterations of corporate structure affecting securities held in the trust.

(o)  <u>Nominee</u>.  To hold securities and other property in bearer form or in the name of a trustee or nominee with or without disclosure of any fiduciary relationship.

(p)  <u>Additional Property</u>.  To receive additional property from any source and add it to the trust estate.

(q)  <u>Insurance</u>.  To carry insurance of such kinds and in such amounts as the Trustee deems advisable, except for insurance on the life of a Settlor, the Trustee, or a spouse of theirs.  The Trustee shall not apply trust property to the payment of premiums on an insurance policy on the life of Settlor, the Trustee, or a spouse of theirs.

(r)  <u>Business Powers</u>.

(i)  <u>In General</u>.  To engage in any lawful business including, but not limited to, the power to continue at the risk of the trust estate the operation of any business which may become a part of the trust estate, and to sell, liquidate, or otherwise terminate any business interest, including, but not limited to, the fulfillment of any agreement for the disposition of any such business interest.

(ii)  <u>Closely Held Businesses</u>.  This trust may be funded with, or subsequently purchase or otherwise acquire, securities or other financial interests in one or more closely held businesses (each of which is hereinafter referred to as the "business").

(1)  <u>Exoneration from Liability</u>.  It is realized that the business may not be the type of investment in which fiduciaries would normally invest estate or trust funds.  Nonetheless, the Trustees shall incur no liability for any loss which may be sustained by reason of the retention, operation or sale of the business or the exercise of any power conferred upon the Trustees with respect to the business.

(2)  <u>Management Powers</u>.  The Family Trustee shall have the exclusive duty to deal with and manage the business.  In addition to any power granted by law or elsewhere in this document, the Family Trustee shall have the following powers:

(A)  To retain and continue the business or any interest therein for such time as the Family Trustee considers advisable;

-21-

App. 85

(B)  To operate or participate in the operation of the business in the form of a corporation, limited liability company, partnership or proprietorship;

(C)  To direct, control, supervise, manage, operate or participate in the operation of the business; to serve as an officer and director of the business; and to receive from the business compensation for his services in addition to his compensation as a Family Trustee;

(D)  To delegate all or any part of his power to supervise, manage or operate the business to such persons as he may select, including any director, officer or employee of the business;

(E)  To engage, compensate and discharge such managers, employees, agents, attorneys, accountants, consultants or other representatives as he considers advisable, including anyone who may be a beneficiary or fiduciary of this Trust;

(F)  To invest or employ in the business, or to use as collateral for loans to the business, such other estate or trust funds as he considers advisable;

(G)  To sell, liquidate or otherwise dispose of all or any part of the business at such time or times, for such prices and upon such terms and conditions as he considers advisable, and to sell the business to anyone who is a beneficiary or a fiduciary of this Trust; and

(3)  _Exclusion from Powers_.  Neither Commonwealth Trust Company nor any successor Administrative Trustee shall have any power, duty and/or responsibility in connection with the operation, control, supervision, management and participation of the business.

(s)  _Income and Principal_.  To determine, in accordance with the provisions of Delaware law, what constitutes income and principal of the trust estate, the manner in which expenses and other charges shall be allocated between these accounts, and whether or not to establish reserves for depreciation or depletion, and to add undistributed income to principal.

(t)  _Tax Elections_.  To exercise any tax option or election permitted by law as the Trustee determines, in its sole discretion, even though the effect is to treat beneficiaries hereunder differently, or to favor some at the expense of others.  The Trustee may, but need not, make such compensating adjustments among beneficiaries with respect thereof as it deems appropriate considering the nature of the tax election and the amounts involved.

App. 86

(u) <u>Reliance</u>. To rely upon any notice, certificate, affidavit, or other document or evidence believed by the Trustee to be genuine and accurate, in making any payment or distribution. The Trustee shall incur no liability for a disbursement or distribution made in good faith and without actual notice or knowledge of a changed condition or status affecting any person's interest in the trust or any other matter.

(v) <u>Commingling</u>. To commingle and invest as one fund, or make joint investments with, the principal of two or more separate trusts established hereunder, with each trust having an undivided interest therein.

(w) <u>Division and Distribution</u>. To make all allocations, distributions, or divisions contemplated by this Trust Agreement; to allocate, distribute and divide different kinds or disproportionate shares of property or undivided interests in property among the beneficiaries or trusts, in cash or in kind, or both, without regard to the income tax basis of specific property allocated to any beneficiary or trust, even though shares may as a result be composed differently, and to determine the value of any property so allocated, divided or distributed.

(x) <u>Withholding of Distribution</u>. To withhold from distribution all or any part of the trust property as long as the Trustee, in its discretion, determines that such property may be subject to conflicting claims, to tax deficiencies, or to liabilities, contingent or otherwise, properly incurred in the administration of the trust.

(y) <u>Mineral Powers</u>. To retain or acquire interests in oil, gas, or other mineral resources; to execute as to those interests any agreements, assignments, contracts, deeds, grants or leases for any term (even though the term may extend beyond the termination of the trust); to manage, control, operate, explore, mine, develop, or take any action for the production, recovery, sale, treatment, storage, or transportation of any such interest; to drill, rework, or recomplete wells of any type; to conduct or participate in secondary recovery operations; to enter into agreements for pooling or unitization; and to install, operate, or participate in the operation of any plant, mine, or other facility.

(z) <u>Environmental Hazards</u>. To use and expend the trust income and principal to (i) take all appropriate action to prevent, identify, or respond to actual or threatened violations of any environmental law or regulation for which the Trustee may have responsibility, including the authority to conduct environmental assessments, audits, and site monitoring to determine compliance with any environmental law or regulation; (ii) take all appropriate remedial action to contain, cleanup, or remove any environmental hazard including a spill, release, discharge, or contamination, either on its own accord or in response to an actual or threatened violation of any environmental law or regulation; (iii) institute legal proceedings concerning environmental hazards or contest or settle legal proceedings brought by any local, state, or federal agency concerned with environmental compliance, or by a private litigant; and (iv) comply with any local, state, or federal agency order or court order directing an assessment, abatement, or cleanup of any environmental hazards.

**App. 87**

(aa)  <u>Miscellaneous Powers</u>.  Generally to do and perform any and all acts, things, or deeds which, in the discretion of the Trustee, may be necessary or proper for the protection, preservation, and promotion of the trust properties and estate.

6.2  <u>Division of Powers</u>.  The powers and duties granted under this Trust Agreement shall be divided among the Trustees as follows:

(a)  <u>Administrative Trustee</u>.  The Administrative Trustee shall have the following exclusive duties, which shall all be carried out in the State of Delaware or such other jurisdiction as the Trustee shall, from time to time, select as the situs of the trust:

(i)  To maintain bank accounts, brokerage accounts and other custody accounts which receive trust income and contributions and from which trust expenditures and distributions are disbursed.

(ii)  To maintain storage of tangible personalty and evidence of intangible trust property.

(iii)  To maintain trust records.

(iv)  To maintain an office for Trustee meetings and other trust business.

(v)  To originate, facilitate and review trust accountings, reports and other communications with the Settlor, any co-Trustees, beneficiaries and unrelated third parties.

(vi)  To respond to inquiries concerning the trust from the Settlor, any co-Trustees, beneficiaries and unrelated third parties.

(vii)  To execute documents with respect to trust account transactions.

(viii)  To retain accountants, attorneys, investment counsel, agents and other advisers in connection with the performance of its duties under this Section 6.2.

(b)  <u>Independent Trustee</u>.  The Independent Trustee shall have all of the powers and duties specifically assigned to the Independent Trustee under this Trust Agreement.  These powers may only be exercised by the Independent Trustee.

(c)  <u>Family Trustee</u>.  The Family Trustee shall possess and exercise all of the powers and duties of the Trustee not specifically granted to the Administrative Trustee or the Independent Trustee under this Trust Agreement, including those specifically assigned to the Family Trustee.  Without limiting the generality of the foregoing, the Family Trustee shall exercise all Trustee authority and have all Trustee responsibility with respect to the investment of the trust estate.  If there is no Family Trustee serving,

-24-

**App. 88**

however, all of the powers and duties of the Trustee, including those assigned to the Family Trustee, shall be exercised and discharged by the Independent Trustee.

6.3    Merger of Trusts.  If at any time a Trustee of any trust created pursuant to this Trust Agreement shall also be acting as Trustee of any other trust created by trust instrument or by will for the benefit of the same beneficiary or beneficiaries and upon substantially the same terms and conditions, the Trustee is authorized and empowered, if in the Trustee's discretion such action is in the best interest of the beneficiary or beneficiaries of the trust created hereunder, to transfer and merge all of the assets then held under such trust created pursuant to this Trust Agreement to and with such other trust and thereupon and thereby to terminate the trust created pursuant to this Trust Agreement.  The Trustee is further authorized to accept the assets of the other trust which may be transferred to the Trustee of the trust created hereunder and to administer and distribute such assets and properties so transferred in accordance with the provisions of this Trust Agreement.  If the component trusts differ as to contingent beneficiaries and the contingency occurs, the funds may be distributed in such shares as the Trustee, in the Trustee's sole discretion, shall deem necessary to create a fair ratio between the various sets of remaindermen.  If any trust created in this Trust Agreement is merged with any trust created under any other instrument, such merged trust shall not continue beyond the date on which the earliest maximum term of the trusts so merged would, without regard to such merger, have been required to expire.  Settlor further directs that, as to any property at any time a part of any trust estate (including a merged trust) as to which under the laws of any state applicable to said property that trust is required to be terminated at any time prior to its normal termination date, the trust as to that particular property shall terminate at the time required by the laws of said state.

6.4    Certain Powers and Rights Limited.  Settlor intends that the trust created under Section 3.1 hereof shall not be included in Jim's gross estate for estate tax purposes unless the Independent Trustee grants Jim a general power of appointment pursuant to paragraph 3.1(d).  All issues applicable to the trust shall be resolved accordingly.

6.5    GST Inclusion Ratio.  If property not having an inclusion ratio for purposes of the generation-skipping transfer tax equal to zero is directed to be added to a trust which has an inclusion ratio equal to zero, the Trustee may decline to make the addition and may, instead, administer the property as a separate trust with provisions identical to the trust having an inclusion ratio equal to zero.  If property having an inclusion ratio for purposes of the generation-skipping transfer tax equal to zero is directed to be added to a trust which has an inclusion ratio not equal to zero, the Trustee may decline to make the addition and may, instead, administer the property as a separate trust with provisions identical to the trust having an inclusion ratio not equal to zero.

6.6    Out-of-State Properties.  If any trust property is situated in a jurisdiction in which the Trustee is unable or unwilling to act, the Trustee may appoint an ancillary trustee for such jurisdiction and may confer upon the ancillary trustee such powers and discretions, exercisable without court order, to act with respect to such property as the Trustee deems proper.  The ancillary trustee shall be responsible to the Trustee for all property it administers.  The Trustee

App. 89

may pay the ancillary trustee reasonable compensation for its services and may absolve it from any requirement to furnish bond or other security.

6.7    <u>Management of Real Property</u>. The Family Trustee (or the Independent Trustee pursuant to Section 6.2(c) hereof), acting alone, shall make any and all decisions regarding: (i) the acquisition, retention and disposal of real estate; (ii) the operation, maintenance, repair, rehabilitation, alteration, construction, erection, improvement, or removal of any improvements on real estate; (iii) the subdivision of real estate; (iv) the granting of easements, giving of consents, and entering into contracts relating to real estate or its use; (v) the release or dedication of any interest in real estate; and (vi) the payment of taxes, utilities, and maintenance expenses attributable to real estate owned by any trust created hereunder. The Family Trustee (or the Independent Trustee pursuant to Section 6.2(c) hereof) may, in its discretion, either exercise such powers or appoint an ancillary trustee to exercise such powers. The Trustee may pay the ancillary trustee reasonable compensation for its services and may absolve it from any requirement to furnish bond or other security.

6.8    <u>No Court Supervision</u>. The Trustee shall not be required to qualify before or be appointed by any court; nor shall the Trustee be required to obtain the order or approval of any court in the exercise of any power or discretion.

6.9    <u>Division of Trusts</u>. The Trustee may divide any trust established by this Trust Agreement into two or more separate trusts as provided in this section. Settlor exonerates the Trustee from any liability arising from the exercise or failure to exercise any powers granted herein, provided the Trustee acts in good faith.

(a)    <u>Division and Funding of Separate Trusts</u>. The Trustee may divide any trust established by this Trust Agreement, at any time, into two or more separate trusts so that the generation-skipping transfer tax inclusion ratio as defined in Section 2642(a) of the Code for each trust shall be either zero or one. Any such division shall be accomplished in accordance with applicable regulations under Chapter 13 of the Code.

(b)    <u>Administration of Separate Trusts</u>. Such separate trusts shall have the identical provisions as the original trust. However, with respect to each separate trust, the Trustee may: (1) make different tax elections, (2) expend principal and exercise any other discretionary powers with respect to such separate trusts differently, (3) invest such separate trusts differently, and (4) take all other actions consistent with such trusts being separate trusts.

(c)    <u>Powers of Appointment</u>. The donee of any power of appointment with respect to a trust so divided may exercise such power of appointment differently with respect to the separate trusts created by the division.

6.10    <u>Limitation of Powers</u>. The following limitations, affecting the administration of the trusts created hereunder, apply notwithstanding any other provision of this Trust Agreement. For purposes of this Section 6.10, the term "Settlor" shall include any individual who contributes property to the Trustee to be added to the trust estate.

-26-

(a)    <u>Support Duty</u>. Distributions from the trust estate shall not be made which discharge, in whole or in part, the personal legal obligations of a Settlor or a Trustee from time to time existing, to support or educate any of the trust beneficiaries. When determining these legal obligations, the existence of this trust and funds made available by it shall not be taken into consideration.

(b)    <u>Adequacy of Consideration</u>. No party may, through purchase, exchange, or otherwise, deal with or dispose of the corpus or the income of the trust estate for less than adequate consideration in money or money's worth.

(c)    <u>Insurance</u>. The Trustee shall not apply trust property to the payment of premiums on an insurance policy on the life of a Settlor, the Trustee or a spouse of either of them.

(d)    <u>Borrow</u>. The Trustee shall not allow a Settlor to borrow trust principal or income, directly or indirectly, without adequate interest or security.

(e)    <u>Substitute Property</u>. The Trustee shall not allow a Settlor to reacquire or exchange any property of the trust estate by substituting other property with an equivalent value.

(f)    <u>Vote</u>. A Settlor, acting as a Trustee, shall not be entitled to vote, directly or indirectly, shares of stock of a controlled corporation, as defined under Section 2036 of the Code, which is held as part of the trust estate.

6.11   <u>Dealing with Fiduciaries</u>. The Trustee may enter into any transaction with the Trustee or beneficiaries of the trusts created hereunder, acting in their individual or in another fiduciary capacity, or with any person or entity related to the Trustee or a beneficiary in any manner, if such transaction is otherwise authorized under this Trust Agreement. Without limiting the generality of the foregoing authorization, the Trustee may enter into any transaction otherwise authorized hereunder on behalf of any trust created hereunder even though the other party to the transaction is: a trust of which a beneficiary or Trustee under this Trust Agreement is a beneficiary or trustee, including, but not limited to, any trust established by this Trust Agreement; an estate of which a beneficiary or Trustee under this Trust Agreement is a representative or beneficiary; or a business or charitable corporation of which a beneficiary or Trustee under this Trust Agreement is a director, officer, employee, or owner.

ARTICLE VII

<u>IRREVOCABILITY</u>

This Trust Agreement and each of its provisions may not be revoked, amended, or modified.

App. 91

ARTICLE VIII

## MISCELLANEOUS PROVISIONS

8.1     Applicable Law.  The trust created under this Trust Agreement shall be deemed a Delaware trust and all matters pertaining to the validity, construction, and application of this Trust Agreement or to the administration of the trust created hereunder shall, in all respects, be governed by the laws of the State of Delaware.  However, if the Trustee, in its sole discretion, determines that a change of situs would be beneficial to the purposes of the trust established by this Trust Agreement, the Trustee shall have the discretion and authority to change the situs of any such trust to another state.  No change of situs shall be authorized herein, however, which would result in a termination of the trust for federal tax purposes. Furthermore, the Trustee shall not be entitled to change the situs of the trust to a jurisdiction that has a rule against perpetuities or similar rule which limits the period during which property can be held in trust.   Any proceeding involving the Trust must be brought in the State of Delaware for so long as the situs of the Trust shall be the State of Delaware.

8.2     Perpetuities Provision.  The trust created hereunder shall be perpetual to the fullest extent permitted by Delaware law.  If the trust created hereunder is deemed to be subject to the law of a jurisdiction that has a rule against perpetuities or similar rule which limits the period during which property can be held in trust, then such trust shall terminate in all events upon the expiration of the longest period the property may be held in trust under this Agreement under the law of such jurisdiction (including any application periods in gross, such as 110 years, 360 years, or 1,000 years); provided, however, that if the jurisdiction has a rule against perpetuities or similar rule which applies only to certain types of property, such as real property, the provisions of this Section shall apply only to such property.  If under the law of such jurisdiction the longest period that property may be held in trust is determined with reference to the death of the last survivor of a group of individuals in being upon the date of this Trust Agreement, those individuals shall consist of Jim and Jim's Descendants who are in being on the date of this Trust Agreement.  Upon termination of a trust pursuant to the provisions of this Section 8.2, the Trustee shall distribute such trust to its income beneficiaries determined at the time of distribution.  If at that time rights to income are not fixed by the terms of the trust, distribution shall be made to the persons to whom the Trustee may then distribute income, in proportions determined in the Trustee's discretion, exercised consistently with the trust's purposes.

In the event any trust created hereunder owns real property, and if such real property is subject to a rule against perpetuities or similar rule which limits the period during which property can be held in trust, then the Trustee shall take such action as is necessary to avoid termination of the trust with respect to that real property interest including, without limitation, selling the real property or contributing the real property to a business entity in exchange for ownership interests in such entity to be owned by the trust.

8.3     Gestation.  A child in gestation who is born alive shall be considered a child in being throughout the period of gestation.

-28-

App. 92

8.4     Survivorship.  Any person must survive by thirty (30) days for a gift made in this Trust Agreement which directly or indirectly requires such person's survival of another to be effective.

8.5     Release of Powers and Interests.  Any person, including a beneficiary and a Trustee, shall have the power to disclaim, release, or restrict, irrevocably, in whole or in part, any interest, right, power, or discretion granted to such person with respect to any trust by signed instrument delivered to the Trustee, or in any other manner permitted by law.  Any person designated or appointed as a Trustee may, prior to accepting the trust, by written instrument decline to accept any right, power, or discretion with respect to the trust and may accept the trust without such right, power, or discretion.

8.6     Powers of Appointment.

(a)     Capacity in Which Exercisable.  Every power of appointment granted to a beneficiary under this Trust Agreement is exercisable by that beneficiary in the beneficiary's individual capacity, notwithstanding the fact that the beneficiary may also be serving as a Trustee of the trust.

(b)     Manner of Appointment.  Every power of appointment granted herein: (i) shall be personal to the donee of such power and may not be exercised on behalf of the donee by any other person, including an attorney-in-fact, a guardian, or any other court appointed representative, and (ii) may be exercised in whole or in part and in favor of one or more potential beneficiaries to the exclusion of others.  Appointment may be outright or in further trust, with all provisions determined by the donee of the power, and may confer a power of appointment upon the beneficiary or others, if within the constraints imposed by any applicable rule against perpetuities and any other law which is applicable to the appointment.

(c)     Exercise of Inter Vivos Power.  An inter vivos power of appointment granted in this Trust Agreement may be exercised only by a written instrument, executed and acknowledged by the donee and delivered to the Trustee during the donee's lifetime, which specifically refers to the power of appointment and expresses the intention to exercise it.  If no such instrument is delivered to the Trustee during the donee's lifetime, upon the donee's death the Trustee may distribute the property subject to the power in the manner provided in this Trust Agreement for distribution in default of exercise.

(d)     Determination of the Exercise of a Testamentary Power.  The Trustee may rely upon any instrument admitted to probate as a will or codicil in determining whether a testamentary power of appointment granted herein has been exercised.  If no will or codicil is brought to the Trustee's attention within ninety (90) days of a death to indicate the exercise of a testamentary power, the Trustee may distribute the property subject to the power according to the terms herein provided for distribution in default of exercise. The Trustee will be protected from liability for its actions as authorized in this subsection (d), but this subsection does not affect a beneficiary's rights in the property subject to the power of appointment.

(e)    Tax Consequences.  The exercise of a power of appointment may have important tax consequences.  The donee of any power of appointment should consult with counsel before exercising such power of appointment.

8.7    Liability of Third Party.  No person paying money or delivering property to the Trustee need see to the application of such money or property.  No person dealing with the Trustee need inquire into the propriety of any transaction or the Trustee's authority to enter into and consummate the same.

8.8    Use of Words.  As used in this Trust Agreement, the masculine, feminine, and neuter gender, and the singular or plural of any word each includes the others unless the context indicates otherwise.

8.9    Unenforceable Provision.  If any provision of this Trust Agreement is unenforceable, the remaining provisions shall be given effect, unless to do so would produce an unreasonable result.

8.10    Titles, Headings, and Captions.  All titles, headings, and captions used in this Trust Agreement have been included for administrative convenience only and should not be construed in interpreting this Trust Agreement.

8.11    Counterpart Signatures.  This document may be executed in counterparts, and all counterparts so executed shall constitute a single document, notwithstanding that the interested parties are not or may not be signatories to the original or to the same counterpart.

8.12    Trust Name.  The trusts established under Article II of this Trust Agreement, collectively, shall be known as the "The Dugaboy Investment Trust".

IN WITNESS WHEREOF, the Settlor, the Family Trustee and the Administrative Trustee have hereunto set their hands on the day and year first above written in multiple originals.  The Trustees agree to administer the trust estate in accordance with the terms of this Trust Agreement.  The Independent Trustee shall begin serving as such upon delivery of a written acknowledged instrument to the Family Trustee in accordance with Section 5.2 hereof.

**App. 94**

_Dana Scott Breault_ 23 Oct 10
DANA SCOTT BREAULT, Settlor

STATE OF TEXAS      §
                    §
COUNTY OF DALLAS    §

BEFORE ME, the undersigned authority, on this day personally appeared DANA SCOTT BREAULT, as Settlor, known to me to be the person whose name is subscribed to the foregoing Trust Agreement and acknowledged to me that she executed the same for the purposes and consideration therein expressed.

GIVEN UNDER MY HAND AND SEAL OF OFFICE this _23rd_ day of October, 2010.

_____
Notary Public

RAVI IYER
Notary Public, State of Texas
My Commission Expires
June 12, 2013

-31-

**App. 95**

_____
JAMES D. DONDERO, Family Trustee

STATE OF TEXAS      §
                             §
COUNTY OF DALLAS     §

BEFORE ME, the undersigned authority, on this day personally appeared JAMES D. DONDERO, as Family Trustee, known to me to be the person whose name is subscribed to the foregoing Trust Agreement and acknowledged to me that he executed the same for the purposes and consideration therein expressed.

GIVEN UNDER MY HAND AND SEAL OF OFFICE this 28th day of October, 2010.



_____
Notary Public

MELINDA SLOANE
Notary Public, State of Texas
My Commission Expires
October 19, 2011

-32-

App. 96

COMMONWEALTH TRUST COMPANY,
Administrative Trustee

By: _Cynthia D M Brown_
    Name:   Cynthia D. M. Brown
    Title:    President

STATE OF DELAWARE     §
                      §
COUNTY OF NEW CASTLE    §

BEFORE ME, the undersigned authority on this day personally appeared _Cynthia D. M. Brown_, _President_, known to me to be the person and officer whose name is subscribed to the foregoing instrument and acknowledged to me that he/she executed the same for the purposes and consideration therein expressed as the act of COMMONWEALTH TRUST COMPANY and in the capacity therein expressed.

GIVEN UNDER MY HAND AND SEAL OF OFFICE this _15th_ day of ~~October~~ November 2010.

_Laura M Owens_
Notary Public

5480300v.6 47609/1

LAURA M. OWENS
MY COMMISSION
EXPIRES
MAY 30, 2014
NOTARY PUBLIC
STATE OF DELAWARE

**App. 97**